1
2
3
4
5
6        IN THE UNITED STATES DISTRICT COURT

7            FOR THE DISTRICT OF ARIZONA

8
MICHAEL MARTIN SANDERS,            )
9                                   )
         Petitioner,                )
10                                  )
         v.                         )   CIV 05-00572 PHX EHC (MEA)
11                                  )
DORA SCHRIRO and                    )          AMENDED
12 ARIZONA ATTORNEY GENERAL,        )   REPORT AND RECOMMENDATION
                                    )
13       Respondents.               )
_____ )
14
TO THE HONORABLE EARL H. CARROLL:
15
         On February 18, 2005, Petitioner filed a *pro se*
16
petition seeking a writ of habeas corpus pursuant to 42 U.S.C.
17
§ 2254, challenging his criminal conviction by an Arizona state
18
court.  Petitioner filed an amended petition seeking federal
19
habeas relief on January 25, 2006.  See Docket No. 5.
20
Respondents filed an Answer to Amended Petition for Writ of
21
Habeas Corpus ("Answer") (Docket No. 24) on September 22, 2006.
22
Petitioner filed a traverse to the answer on April 30, 2007.
23
See Docket No. 34.
24
         I Procedural History
25
         In 1999, Petitioner was convicted on charges arising
26
from an incident occurring in Maricopa County on August 31,
27
1997, resulting in the deaths of two individuals, which was
28

locally and colloquially known as the "bounty hunters case."

Petitioner and his codefendants David Brackney, Matthew Brackney, Brian Robbins, and Ron Timms, were each charged in September 1997 with two counts of first-degree felony murder, "or in the alternative," second-degree murder; two counts of aggravated assault; four counts of unlawful imprisonment; two counts of aggravated assault; and one count of burglary in the first degree.  See id., Exh. A.  The state filed notice of its intent to seek the death penalty if Petitioner was convicted of first-degree felony murder.  Id., Exh. B.

Petitioner and Mr. David Brackney were accused of being the actual shooters of the victims and both were wounded in an exchange of gunfire with one of the victims.  Id., Exh. G at 2-4.  Petitioner asserted at his trial that he and his codefendants were legitimate "bounty hunters," i.e., bail enforcement agents, who entered the victims' home at 5035 West Windsor, in Phoenix, to arrest an alleged California bail absconder, Mr. Victor Alcantar.  Mr. Alcantar was not a resident of the house at the time of the entry, which was occupied at that time by the two victims, two other adults and two children. Petitioner and a codefendant attempted entry into a bedroom and were shot by one of the victims.  Petitioner and his codefendant returned fire, killing both victims in the bedroom.  Petitioner argued at his trial that the entry into the home was justified and that the victims were killed in self-defense.  The prosecution argued to the jury that Petitioner and his codefendants used the bail bond on Mr. Alcantar, which was

-2-

expired, as a cover story for an intended burglary and that their acts, therefore, constituted first-degree felony murder. The ballistics evidence presented at Petitioner's trial indicated a victim had fired his weapon before either Petitioner or Mr. Brackney used their weapons. <u>See</u> <u>id.</u>, Exh. G at 5. Accordingly, the issue at trial was the defendants' intent, i.e., whether Petitioner and his codefendants really intended to enter the home to enforce the expired bail bond regarding Mr. Alcantar, or whether Petitioner had planned to enter the home to burglarize the home, believing he would find drugs and a large sum of cash in the home. <u>See</u>, <u>e.g.</u>, <u>id.</u>, Exh. G at 6 (Petitioner's brief on direct appeal, which states: "The critical issue in the case was [Petitioner's] intent for entering the home.").

Prior to Petitioner's trial, Mr. Timms agreed to plead guilty to a charge of second-degree murder and to testify against Petitioner, i.e., to testify that Petitioner had intended the events in question to be a burglary and not a legitimate bail operation. <u>Id.</u>, Exh. G at 6.

Petitioner was tried separately from his codefendants, in September and October of 1998. <u>Id.</u>, Exh. F; Exh. G at 2.[1]

---

[1] After Petitioner was tried and convicted, Mr. Robbins accepted a plea agreement in September of 1998, which was revoked in November and reentered in March of 1999, revoked, and reentered in 2000. Mr. David Brackney was tried and convicted on all charges in February of 2000, subsequent to Petitioner's conviction. Mr. Brackney argued at his trial, which lasted for approximately one month, that he had no knowledge of a plan to burglarize the victims' home. <u>See</u> Gilbert Garcia, "Mutiny on the Bounty," *Phoenix New Times*, Feb. 17, 2000. The Garcia article states Mr. Timms testified at Mr. Brackney's trial. <u>Id.</u> The Garcia article indicates Mr. Brackney testified in

Mr. Timms testified for the state at Petitioner's trial.  Id.,
Exh. G at 6 ("Timms testified that he had learned about money
and drugs at the home... and that he passed this information on
to [Petitioner]. [] The gist of Timms' testimony on direct was
that the bond paperwork was simply a ruse.").  Petitioner did
not testify at his trial.[2]  Defense counsel offered the testimony
of a Phoenix Police Department detective assigned to the
narcotics division and a Phoenix Police Department sergeant.
Id., Exh. G at 7.  These witnesses testified Mr. Brackney had
contacted them shortly before the incident to advise them he was
going to pick-up a bail absconder and that drug activity might
be involved.  Id., Exh. G at 7.  At Petitioner's trial, a
detective testified that, in 1997, there were three outstanding

_____

his own defense, and that the jury in Mr. Brackney's trial deliberated
for approximately five hours before returning a verdict.  Id.
According to this article, at some point Mr. Robbins had incriminated
all of the defendants, but later recanted his incriminating
statements.  Id.  Matthew Brackney, David Brackney's son, entered a
guilty plea in 2000, after his father's conviction.  See Arizona v.
Brackney, et al., CR1997-010238-C (docket available through the
Maricopa County Superior Court's website).

        [2] Petitioner asserts in his amended habeas petition that he
did not testify at his trial because he was forced to wear a shock-
belt at trial.  See Docket No. 5 (Amended Petition) at 96-98.
However, the Court notes allowing Petitioner to testify could have
opened the door to the introduction of Petitioner's prior felony
convictions, including a conviction arising from an incident wherein
Petitioner shot an individual during a bail enforcement action.  See
Arizona v. Sanders, CR1990-005085 (charging Petitioner with criminal
trespass, a felony, and misdemeanor assault); United States v.
Sanders, 93 CR 00170 (wherein Petitioner was found guilty of
possession of a firearm by a convicted felon and prohibited from
engaging in employment involving bond recovery for a period of three
years).  See also Texas v. Sanders, 1981, wherein Petitioner was
convicted of assault and sentenced to a term of two years
incarceration, and Texas v. Sanders, 1978, wherein Petitioner was
convicted of carrying a prohibited weapon.

felony warrants for Mr. Alcantar. <u>See</u>, <u>e.g.</u>, <u>id.</u>, Exh. X at 3. Petitioner later asserted his belief that Mr. Alcantar was in the home was reasonable and justified the entry into the home, because

> the house had been watched by Sanders and his
> co-defendants.... witness trial testimony
> confirmed that Junior Rodriguez bore a
> resemblance to Alcantar and frequented the
> house to buy and use drugs... Timms testified
> that he verified Alcantar's presence at the
> house to Sanders and the others.  ...These
> facts are not exhaustive, but illustrate that
> a § 3892 defense was reasonably supported by
> the evidence.

<u>Id.</u>, Exh. Z at 3.

On October 30, 1998, after hearing approximately six weeks of testimony, the jury found Petitioner guilty on each charge stated in the indictment.  <u>Id.</u>, Exh. C & Exh. G at 2.

In March and April of 1999, the trial court held hearings on a motion filed by the state to "determine" Petitioner's counsel.  <u>See</u> <u>id.</u>, Exh. O at 12; Exh. NN.  The state asserted Petitioner's counsel (referred to herein as "Jane Doe")had a conflict of interest arising from her "personal relationship" with Petitioner.  <u>Id.</u>, Exh. Z at 6.  At a hearing conducted April 27, 1999, Petitioner waived "any conflict that might arise as a result of any personal relationship with [Jane Doe]."  <u>Id.</u>, Exh. NN.  On April 29, 1999, the trial court filed a decision regarding the disqualification of Petitioner's counsel, Jane Doe.  <u>Id.</u>, Exh. QQ.

At that time, Petitioner waived any ineffective assistance of counsel claim against Jane Doe due to jail

surveillance "necessitated" by Petitioner's conduct in the jail with his counsel. Id., Exh. O at 12-13. In July of 1999, the Arizona State Bar filed a formal complaint against Petitioner's lead public appointed defense counsel, Jane Doe, for engaging in a sexual relationship with Petitioner during her representation of him, *inter alia* by engaging in sexual acts in an interview room at the jail. See, e.g., "State bar files complaint against [Jane Doe]," *Business J. of Phoenix*, July 2, 1999. Jane Doe was terminated from her position as a public defender as a result of her acts, and was thereafter privately retained by Petitioner as his defense and appellate counsel. Answer, Exh. Z at 6; Exh. QQ.

After a hearing regarding aggravating and mitigating circumstances, on August 25, 1999, the trial court issued a special verdict and imposed on Petitioner consecutive natural life sentences on each of the first-degree felony murder convictions. Id., Exh. D & Exh. E. The trial court imposed consecutive, aggravated 15-year sentences on the aggravated assault convictions; 24-year sentences on the aggravated assault convictions committed against the two children; and 21 years on the burglary conviction. Id., Exh. E. The trial court imposed 6-month jail sentences on the unlawful imprisonment convictions Id., Exh. E.

Petitioner filed a motion to vacate the judgment. On November 20, 1999, the trial court conducted an evidentiary hearing and oral argument regarding the motion. Id., Exh. OO. Petitioner asserted his right to counsel was violated because

-6-

conversations with counsel were overheard or recorded by jail staff.  Id., Exh. OO.  The trial court denied the motion to vacate judgment.  Id., Exh. OO.

Petitioner timely filed a notice of appeal.  Jane Doe represented Petitioner on direct appeal and raised the following claims on his behalf:

1.   The first-degree murder charges were duplicitous because alternative second-degree murder charges were alleged in the indictment.

2.   The jury was improperly instructed regarding the authority of a bounty hunter to enter a home and arrest a bail absconder, depriving Petitioner of a legitimate defense.

3.   The trial court erred by refusing to instruct the jury that a bounty hunter's conduct could be justified even if there was a defect in the court order authorizing the arrest of the subject bail absconder.

4.   The trial court erred by unreasonably limiting the cross-examination of Mr. Timms and two law enforcement officers.

5.   The trial court abused its discretion by precluding evidence regarding "fight or flight" syndrome and the procedures employed by law-enforcement officers in forced-entry situations.  The trial court also erred by excluding the grand jury testimony of Petitioner's codefendant, Mr. Brackney and the "admission of a party opponent," i.e., statements made by the prosecution prior to the trial.

6.   The trial court erroneously allowed the admission of other "bad act" evidence.

7.   The trial court erred by denying Petitioner's motion for a change of judge predicated on the fact that the trial judge had presided over another capital case wherein the defendants alleged Petitioner had committed a different murder.

8.   The trial court erred by denying a motion to disqualify the Maricopa County Attorney's Office ("MCAO"), based on Petitioner's "unique relationship" with MCAO, i.e., his status as a former paid informant for MCAO.

On March 15, 2001, the Arizona Court of Appeals affirmed Petitioner's convictions and sentences.   Id., Exh. J. Petitioner sought review of this decision by the Arizona Supreme Court, which summarily denied review on June 19, 2001.   Id., Exh. K & Exh. L.

Petitioner filed a timely action for post-conviction relief in the Arizona Superior Court.   Id., Exh. M & Exh. N, Petitioner, through counsel, Mr. Reeves, raised the following claims:

1.   His trial counsel was ineffective for failing to present a "legal entry" defense.

2.   His trial counsel was ineffective for offering expert witness testimony regarding police tactics rather than expert witness testimony regarding the professional standards of a bail enforcement agent.

3.   The state induced a situation where Petitioner was deprived of the effective assistance of trial counsel by "engineering" the denial of confidential meetings with his defense attorney.

The Arizona Superior Court concluded Petitioner was not entitled to relief. Id., Exh. P. On December 26, 2002, Petitioner filed a motion for a rehearing regarding his Rule 32 petition, alleging "newly discovered material facts" regarding the recording of his legal calls by jail officials. Id., Exh. Q. The trial court ordered the state to respond to Petitioner's arguments and to further allegations set forth in an untimely reply to the State's response to Petitioner's motion. Id., Exh. R & Exh. S. On April 25, 2003, the trial court denied the motion for rehearing for the reasons set forth in the state's response. Id., Exh. T.

On May 1, 2003, the trial court affirmed its previous ruling denying Petitioner's motion for rehearing. Id., Exh. V & Exh. W. Petitioner sought review of this decision by the Arizona Court of Appeals. Id., Exh. X. On July 13, 2004, the Arizona Court of Appeals summarily denied review. Id., Exh. AA. The Arizona Supreme Court denied review on October 20, 2004. Id., Exh. BB & Exh. CC.

On March 3, 2004, during the pendency of his first post-conviction proceedings, Petitioner initiated a second action for post-conviction relief. Id., Exh. DD & Exh. EE. Petitioner averred there had been a significant change in the law which permitted him to file a second post-conviction relief petition asserting that forcing him to wear a shock belt during his trial violated his constitutional rights. Id., Exh. EE. The Arizona Superior Court ruled that the Arizona state courts were not bound by the "new law" because it was a decision by the

Ninth Circuit Court of Appeals.  Id., Exh. FF.  The Superior Court further determined the claim was precluded as waived because Petitioner did not raise the issue regarding the shock-belt in his direct appeal.  Id., Exh. FF.

Petitioner sought review of this decision and also filed a motion to consolidate his second post-conviction action with his first Rule 32 action.  Id., Exh. GG & Exh. HH.  The Arizona Court of Appeals denied the motion because Petitioner had not made the requisite showing that both petitions involved a substantially similar question for review.  Id., Exh. II. The Court of Appeals subsequently summarily denied review of the trial court's denial of post-conviction relief on May 26, 2005. Id., Exh. JJ.  On February 8, 2006, the Arizona Supreme Court also summarily denied review.  Id., Exh. KK.

Petitioner filed a petition for writ of habeas corpus in federal court on February 18, 2005, and filed an amended petition on January 25, 2006.

Petitioner asserts he is entitled to federal habeas relief because:

1.   The state courts interpreted a state statute at Petitioner's trial in accordance with the statute's post-incident revision and applied the revised statute retroactively to criminalize Petitioner' conduct.

2.   Petitioner was deprived of his right to have the jury, rather than the judge, determine his guilt.

3.   Petitioner was deprived of his right to be presumed innocent because the trial court relieved the

-10-

prosecution of their burden of proving all of the elements of the offenses charged.

4. The trial court failed to properly instruct jurors regarding the relevant law, "blighting the whole trial," in violation of Petitioner' constitutional rights.

5. His rights were violated by the allegedly duplicitous murder counts in the indictment.

6. Petitioner was forced to wear a "shock belt" during his trial, in violation of the "Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution."

7. Petitioner was denied his right to confidential attorney-client communications, i.e., the government surreptitiously recorded or listened to his attorney-client communications.

8. The State of Arizona violated 18 U.S.C. § 2511(1) by intercepting Petitioner's pre-verdict telephone conversations with his counsel, without either a court order or his consent.

9. The trial court unduly inhibited Petitioner' ability to conduct appropriate cross-examination regarding the credibility of Mr. Timms.

10. His right to due process was violated when the trial court admitted Mr. Timms' testimony about Petitioner's alleged prior bad acts without the trial court first considering the statements pursuant to the Arizona Rules of Evidence.

11. The trial court violated Petitioner's right to due process of law by precluding him from exercising his right to confrontation, compulsory process, and a meaningful opportunity

to present a complete defense.

      12.  The trial court's preclusion of expert testimony about "fight or flight" syndrome violated Petitioner's right to present a complete defense to the charges against him.

      13.  The trial court erred by precluding expert testimony about law-enforcement procedures, violating Petitioner's right to present a defense.

      14.  Petitioner's right to present a defense was violated by the preclusion of Mr. Brackney's grand jury testimony.

      15.  Petitioner's right to present a defense was violated by the trial court's preclusion of an admission of a party opponent.

      16.  The trial judge was not impartial.

      17.  The Maricopa County Attorney's Offices had a conflict of interest precluding its prosecution of Petitioner.

      18.  His trial counsel were constitutionally ineffective for failing to present a "legal entry" defense pursuant to Arizona Revised Statutes § 13-3892.

      19.  His trial counsel were ineffective for failing to file a motion for a new trial on the grounds that the jury was not instructed on Arizona Revised Statutes § 13-3892.

      20.  His appellate counsel rendered ineffective assistance by failing to raise Petitioner's trial counsels' ineffectiveness for failing to present a legal entry defense under Arizona Revised Statutes § 13-3892 and for their failure to request a new trial on the grounds that the jury was not

-12-

instructed on this statute.

21. He was deprived of his right to the effective assistance of counsel because his trial counsel did not present expert witness testimony regarding bail enforcement tactics rather than one on standards for a professional bail enforcement agent.

22. "The State of Arizona induced ineffective assistance of counsel post-verdict by invading" Petitioner's attorney-client relationship and confidential communications with his attorney.

23. "The State of Arizona induced ineffective assistance of appellate counsel by invading and interfering" with Petitioner's attorney-client relationship and confidential communications with his retained appellate attorney, i.e., Jane Doe.

24. "The State of Arizona by and through Maricopa County has suspended the privilege of the writ of habeas corpus via its Office of Court Appointed Counsel in violation of Article I § 9, cl.2 of the United States Constitution."

25. Petitioner, who is hearing disabled, was discriminated against during his criminal proceedings, in violation of Title II of the Americans with Disabilities Act of 1990.

26. "The errors set forth in this petition that are not singly prejudicial, taken cumulatively worked to [Petitioner's] actual and substantial disadvantage in violation of the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments

to the United States Constitution, and laws of the United States..."

Respondents argue Petitioner did not properly exhaust some of his federal habeas claims in state court because the claims were either never fairly presented in state court or they were presented but were procedurally barred.    Respondents contend any attempt to return to the state courts to exhaust a habeas claim would now be futile because Petitioner's claims are procedurally barred by state law regarding waiver and preclusion.    Respondents argue that, because the claims are procedurally defaulted and because Petitioner has not established either "cause and prejudice" or a "fundamental miscarriage of justice" to excuse his procedural default of his claims, the Court may not grant relief on the merits of any procedurally defaulted claims.    Respondents further maintain that habeas relief may properly be denied on the merits of the claims which were properly exhausted in the state courts.

**II Analysis**

**A. Exhaustion**

A state prisoner must exhaust a federal habeas claim in the state courts before the District Court may grant relief on the merits of the claim.    See, e.g., Coleman v. Thompson, 501 U.S. 722, 729-30, 111 S. Ct. 2546, 2554-55 (1991).    To properly exhaust a federal habeas claim, the petitioner must afford the state the opportunity to rule upon the merits of the claim by "fairly presenting" the claim to the state's "highest" court in a procedurally correct manner.    See, e.g., Castille v. Peoples,

-14-

489 U.S. 346, 351, 109 S. Ct. 1056, 1060 (1989); <u>Rose v. Palmateer</u>, 395 F.3d 1108, 1110 (9th Cir.), <u>cert. denied</u>, 125 S. Ct. 2971 (2005).[3]  The Ninth Circuit Court of Appeals has concluded that, in non-capital cases arising in Arizona, the "highest court" test of the exhaustion requirement is satisfied if the habeas petitioner presented his claim to the Arizona Court of Appeals, either on direct appeal or in a petition for post-conviction relief.  <u>See</u> <u>Swoopes v. Sublett</u>, 196 F.3d 1008, 1010 (9th Cir. 1999).  <u>See also</u> <u>Castillo v. McFadden</u>, 399 F.3d 993, 998 n.3 (9th Cir.), <u>cert. denied</u>, 126 S. Ct. 348 (2005).

    To satisfy the "fair presentment" prong of the exhaustion requirement regarding a federal habeas claim, the petitioner must present both the operative facts and the legal principles controlling the claim to the state courts.  <u>See</u> <u>Kelly v. Small</u>, 315 F.3d 1063, 1066 (9th Cir. 2003).  The Supreme Court has emphasized that the purpose of exhaustion is to give the states the opportunity to pass upon and correct alleged federal constitutional errors.  <u>See</u> <u>Baldwin v. Reese</u>, 541 U.S. 27, 29, 124 S. Ct. 1347, 1349 (2004).  Therefore, if the petitioner did not present the claim to the state court as asserting the violation of a specific federal constitutional right, as opposed to the violation of a state constitutional right, state rule, or state law, the federal habeas claim was

---

[3] Prior to 1996, the federal courts were required to dismiss a habeas petition which included unexhausted claims for federal habeas relief.  However, section 2254 now states: "An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."  28 U.S.C. § 2254(b)(2) (1994 & Supp. 2007).

not "fairly presented" to the state court.  See, e.g., id., 541 U.S. at 33, 124 S. Ct. at 1351.  A petitioner's allusion to "broad constitutional principles, such as due process, equal protection, and the right to a fair trial" in their state court pleadings is not sufficient to establish a federal constitutional claim was fairly presented to the state courts. Castillo, 399 F.3d at 999 (internal citations omitted).

### B. Procedural default

A federal habeas petitioner has not exhausted a federal habeas claim if he still has the right to raise the claim "by any available procedure" in the state courts.  28 U.S.C. § 2254(c) (1994 & Supp. 2007).  Because the exhaustion requirement refers only to remedies still available to the petitioner at the time they file their action for federal habeas relief, it is satisfied if the petitioner is procedurally barred from pursuing their claim in the state courts.  See Castille, 489 U.S. at 351, 109 S. Ct. at 1060.  If it is clear the habeas petitioner's claim is procedurally barred pursuant to state law, the claim is exhausted by virtue of the petitioner's "procedural default" of the claim.

Procedural default occurs when a petitioner has never presented a federal habeas claim in state court and is now barred from doing so by the state's procedural rules, including rules regarding waiver and the preclusion of claims.  See id., 489 U.S. at 351-52, 109 S. Ct. at 1060; Tacho v. Martinez, 862 F.2d 1376, 1378 (9th Cir. 1988).  Procedural default also occurs when a petitioner did present a claim to the state courts, but

-16-

the state courts did not address the merits of the claim because the petitioner failed to follow a state procedural rule.  See, e.g., Ylst v. Nunnemaker, 501 U.S. 797, 802, 111 S. Ct. 2590, 2594-95 (1991); Szabo v. Walls, 313 F.3d 392, 395 (7th Cir. 2002).  "If a prisoner has defaulted a state claim by 'violating a state procedural rule which would constitute adequate and independent grounds to bar direct review ... he may not raise the claim in federal habeas, absent a showing of cause and prejudice or actual innocence.'"  Ellis v. Armenakis, 222 F.3d 627, 632 (9th Cir. 2000), quoting Wells v. Maass, 28 F.3d 1005, 1008 (9th Cir. 1994).

Because the Arizona Rules of Criminal Procedure regarding timeliness, waiver, and preclusion bar Petitioner from now returning to the state courts to exhaust any unexhausted federal habeas claims, Petitioner has exhausted, but procedurally defaulted, any claims not previously fairly presented to the state courts.  See Beaty v. Stewart, 303 F.3d 975, 987 (9th Cir. 2002).

> Federal courts hearing habeas petitions may not review state convictions, even for federal constitutional claims, if the state court judgment procedurally barring the petitioner's claims rests on an independent and adequate state law ground. []. Procedural default, a particular type of adequate and independent state ground, applies to bar federal habeas review when the state court has declined to address the petitioner's federal claims because he failed to meet state procedural requirements...

Insyxiengmay v. Morgan, 403 F.3d 657, 665 (9th Cir. 2005) (internal citations and quotations omitted).

-17-

1

## C. Cause and prejudice

2      Federal habeas relief based on a procedurally defaulted

3  claim is barred unless the petitioner can demonstrate a

4  miscarriage of justice, or cause and actual prejudice to excuse

5  his default of the claim.  See Coleman, 501 U.S. at 750-51, 111

6  S. Ct. at 2555-56.  "Cause" is a legitimate excuse for the

7  petitioner's procedural default and "prejudice" is actual harm

8  resulting from the alleged constitutional violation.  See Thomas

9  v. Lewis, 945 F.2d 1119, 1123 (9th Cir. 1991).  To demonstrate

10  cause, a petitioner must show the existence of some external

11  factor which impeded his efforts to comply with the state's

12  procedural rules.  See Martinez-Villareal v. Lewis, 80 F.3d

13  1301, 1305 (9th Cir. 1996).  To establish prejudice, the

14  petitioner must show that the alleged error worked to his actual

15  and substantial disadvantage, infecting his entire trial with

16  constitutional violations.  See Correll v. Stewart, 137 F.3d

17  1404, 1415-16 (9th Cir. 1998).  Establishing prejudice requires

18  Petitioner to prove that, "but for" the alleged constitutional

19  violations, there is a reasonable probability he would not have

20  been convicted of the same crimes.  See Manning v. Foster, 224

21  F.3d 1129, 1135 (9th Cir. 2000); Ivy v. Caspari, 173 F.3d 1136,

22  1141 (8th Cir. 1999).  Although both cause and prejudice must be

23  shown to excuse a procedural default, the Court need not examine

24  the existence of prejudice if the petitioner fails to establish

25  cause.  See Engle v. Isaac, 456 U.S. 107, 134 n.43, 102 S. Ct.

26  1558, 1575 n.43 (1982); Thomas, 945 F.2d at 1123 n.10.

27

28                                 -18-

Review of the merits of a procedurally defaulted habeas claim is also appropriate if the petitioner demonstrates review of the merits of the claim is necessary to prevent a fundamental miscarriage of justice. See Dretke v. Haley, 541 U.S. 386, 393, 124 S. Ct. 1847, 1852 (2004); Murray v. Carrier, 477 U.S. 478, 485-86, 106 S. Ct. 2639, 2649 (1986). A fundamental miscarriage of justice occurs only when a constitutional violation has probably resulted in the conviction of one who is factually innocent. See Murray, 477 U.S. at 485-86, 106 S. Ct. at 2649; Thomas v. Goldsmith, 979 F.2d 746, 749 (9th Cir. 1992) (showing of factual innocence is necessary to trigger manifest injustice relief). To satisfy the "fundamental miscarriage of justice" standard, Petitioner would have to establish by clear and convincing evidence that no reasonable juror could have found him guilty of the offenses charged. See Dretke, 541 U.S. at 393, 124 S. Ct. at 1852; Wildman v. Johnson, 261 F.3d 832, 842-43 (9th Cir. 2001).

Petitioner asserts that he need not show cause and prejudice regarding any defaulted claim. See Docket No. 34 at 115 & 116 ("Sanders finds no necessity to assert 'cause and prejudice' per se"). Petitioner further contends that his ineffective counsel was the cause for his procedural default of his claims. Id. at 115. Petitioner also contends that some of his claims did not become apparent until after the time to raise them had passed, and that "the State, State courts, or other officials hindered compliance with a procedural rule or made compliance impracticable." Id. Petitioner further asserts:

-19-

"trial or appellate counsel made or may have made the decision that resulted in default to protect herself from adverse consequences, rather than out of concern for client." Id. Petitioner further contends that the Court must conduct a hearing "on the controlling and controverted factual issues surrounding the default and any excuses for it..." Id. at 117.

### D. Standard of review regarding exhausted claims

The Court may not grant a writ of habeas corpus to a state prisoner on a claim adjudicated on the merits in state court proceedings unless the state court reached a decision contrary to clearly established federal law, or one involving an unreasonable application of clearly established federal law, or unless the state court decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. See 28 U.S.C. § 2254(d) (1994 & Supp. 2007); Mitchell v. Esparza, 540 U.S. 12, 14, 124 S. Ct. 7, 10 (2003). When more than one state court has adjudicated a claim, the Court must analyze the last reasoned decision by a state court to determine if the state's denial of relief on the claim was clearly contrary to federal law. See Barker v. Fleming, 423 F.3d 1085, 1091-92 & n.3 (9th Cir. 2005), cert. denied, 126 S. Ct. 2041 (2006). Additionally, United States Supreme Court holdings at the time of the state court's last reasoned decision are the source of "clearly established federal law" for the purpose of federal habeas review of state court decisions regarding federal constitutional claims. See, e.g., Williams v. Taylor, 529 U.S. 362, 412, 120 S. Ct. 1495, 1523

1  (2000); <u>Barker</u>, 423 F.3d at 1093.

2          When reviewing a habeas claim, a federal court must
3  afford great deference to the state court's rulings with regard
4  to issues raised in the petitioner's federal habeas action.  <u>See</u>
5  <u>Woodford v. Visciotti</u>, 537 U.S. 19, 24, 123 S. Ct. 357, 359-60
6  (2002).  Factual findings of a state court are presumed to be
7  correct and can be controverted by a federal court only when it
8  is presented with clear and convincing evidence.  <u>See</u> <u>Miller-El</u>
9  <u>v. Dretke</u>, 545 U.S. 231, 239-40, 125 S. Ct. 2317, 2325 (2005);
10 <u>Anderson v. Terhune</u>, 467 F.3d 1208, 1212 (9th Cir. 2006).  The
11 "presumption of correctness is equally applicable when a state
12 appellate court, as opposed to a state trial court, makes the
13 finding of fact."  <u>Sumner v. Mata</u>, 455 U.S. 591, 593, 102 S. Ct.
14 1303, 1304-05 (1982).

15         Additionally, a state prisoner may obtain a writ of
16 habeas corpus only upon a showing that he is being held in
17 violation of the Constitution, laws, or treaties of the United
18 States.  <u>See</u> 28 U.S.C. § 2254(a) (1994 & Supp. 2006); <u>Engle</u>, 456
19 U.S. at 119, 102 S. Ct. at 1567.  Federal habeas relief is not
20 available for alleged errors in the interpretation or
21 application of state law.  <u>See</u>, <u>e.g.</u>, <u>Estelle v. McGuire</u>, 502
22 U.S. 62, 67-68, 112 S. Ct. 475, 480 (1991).  Furthermore, the
23 conclusion of an Arizona court regarding an issue of Arizona
24 state law is binding on this Court.  <u>See</u> <u>Menendez v. Terhune</u>,
25 422 F.3d 1012, 1029 (9th Cir. 2005); <u>Hartman v. Summers</u>, 120
26 F.3d 157, 161 (9th Cir. 1997).  The Ninth Circuit Court of
27 Appeals has stated: "If a state law issue must be decided in

28                              -21-

order to decide a federal habeas claim, the state's construction

of its own law is binding on the federal court." Horton v.

Mayle, 408 F.3d 570, 576 (9th Cir. 2005), citing Mullaney v.

Wilbur, 421 U.S. 684, 691, 95 S. Ct. 1881, 1886 (1975).

### D. Petitioner's claims for relief

**1. Petitioner contends Arizona statutes were applied retroactively to criminalize his conduct, in violation of his right to due process and to be free of *ex post facto* laws.**

Petitioner contends the instruction given to the jury

regarding the Arizona statute governing the right of a bail

surety's agent to arrest an individual on a bail bond

constituted a retroactive interpretation of the applicable

statute. Petitioner asserts the jury was told that, as a matter

of Arizona law, a bail recovery agent could not legally enter

the home of a third person to arrest a bail absconder, which

instruction deprived Petitioner of a legitimate defense.

Petitioner argues that, because the jury instruction was a

statement of the law as it was codified after Petitioner's

crime, the jury instruction operated like an *ex post facto* law.[4]

---

[4] In 1997, the Arizona state statute regarding the right of a bond agent to arrest an individual on a bail bond provided in its entirety:

> For the purpose of surrendering the defendant, a surety on the bail bond of defendant may arrest him before the forfeiture of the undertaking, or by written authority endorsed on a certified copy of the undertaking, may empower any adult person of suitable discretion to do so.

Ariz. Rev. Stat. Ann. § 13-3885 (1989 & Supp. 1997).

This statute was revised effective May 29, 1998, as a result of the events involving Petitioner. The statute now provides, *inter alia*:

> ***

> B. A bail recovery agent or a bail bond agent shall not do any of the following:

-22-

Petitioner asserts: "The court's interpretation of the pre-1998 version of [Arizona Revised Statutes] § 13-3885 was not a statement on the law, but a comment on the evidence." Docket No. 5 at 78. Respondents allow this claim was properly exhausted, and assert the claim is not cognizable on federal habeas review because it involves an issue of state law.

In rejecting this claim, presented in Petitioner's direct appeal, the Arizona Court of Appeals concluded the jury instruction properly set forth the limitations on a bail agent's power to enter the home of a third-party that were in effect at the time of the alleged crime. See Answer, Exh. J.  The Arizona Court of Appeals expressly held the trial court's interpretation of Arizona Revised Statutes § 13-3885 did not constitute a change of law being retroactively applied to Petitioner. Id., Exh. J at 11.  Accordingly, the Arizona Court of Appeals determined Petitioner's right to be free of an *ex post facto* law

---

1. Enter an occupied residential structure without the consent of the occupants who are present at the time of the entry.
***
4. Authorize or allow any third party bail recovery agent to undertake an apprehension or arrest if the bail recovery agent has been convicted in any jurisdiction of theft or of any felony or any crime involving carrying or the illegal use or possession of a deadly weapon or dangerous instrument.
*** The bail recovery agent identified in the written notice shall certify on the written notice, under penalty of perjury, that the bail recovery agent has never been convicted in any jurisdiction of theft or of any felony or any crime involving carrying or the illegal use or possession of a deadly weapon or dangerous instrument and that the bail recovery agent has complied with § 20-340.04. ...

1    was not violated.

2         The Arizona Court of Appeals' conclusion that the trial

3    court correctly interpreted an Arizona statute is binding on

4    this Court.  See, e.g., Schad v. Arizona, 501 U.S. 624, 636, 111

5    S. Ct. 2491, 2499 (1991); Mullaney, 421 U.S. at 691, 95 S. Ct.

6    at 1886 (concluding that "state courts are the ultimate

7    expositors of state law"); Shannon v. Newland, 410 F.3d 1083,

8    1087 (9th Cir. 2005), cert. denied, 126 S. Ct. 1333 (2006).[5]

9    _____

10        [5] The Court concludes this comity is especially important
     when the state courts have not interpreted the statute at all or to
11   the contrary prior to the petitioner's criminal proceedings.  Prior
     to Petitioner's trial, the Arizona courts had never directly
12   considered whether the relevant statute allowed entry into a home of
     a third-party to arrest a bail absconder.  With regard to the statute,
13   the Arizona courts had previously stated in an unpublished opinion:
                Statutes that permit private citizens to make
14              arrests are generally narrowly construed. [].
                Strict compliance with the statute is required so
15              a person arrested by an agent of the surety can
                recognize it as a valid arrest, and a breach of
16              the peace can be avoided when a citizen effects
                an arrest.
17   Arizona v. Reihley, 1991 WL 29290, at *2 (Ct. App. 1991) (concluding
     the arrest and resulting search of the defendant were not authorized
18   by section 3885 and reversing the trial court's denial of the
     defendant's motion to suppress and, accordingly, his conviction).
19        The statute, as revised, has been reviewed by the Arizona
     state courts only once since Petitioner's conviction.  See Arizona v.
20   Affordable Bail Bonds, 198 Ariz. 34, 6 P.3d 339 (Ct. App.
     2000)(holding that law enforcement agencies do not have a statutory
21   duty to respond to a bond surety's request to apprehend a fugitive who
     has been located within a residence, and that the surety did not
22   "surrender" the defendant into the custody of the state, so as to be
     entitled to relief from liability on the appearance bond).  In that
23   case, the Arizona Court of Appeals stated:
                In response to a highly publicized killing of two
24              individuals in their home by purported "bounty
                hunters," the legislature in 1998 amended A.R.S.
25              section 13-3885 to narrow the authority of bail
                bondsmen to arrest defendants. See Ann L. Merry,
26              S.B. 1257: Arizona Regulates Bounty Hunters, 31
                Ariz. St. L. J. 229, 230-32 (1999). This statute
27              now provides, in significant part,
                   B. A bail recovery agent or a bail bond agent

28                              -24-

Therefore, the Arizona state courts' decision that Petitioner was not subjected to an *ex post facto* law was not clearly contrary to federal law.

Due process problems in the application of state laws by state courts do frequently arise under the *ex post facto* clause, and related due process constraints, when a state changes a statute or rule. See, e.g., Brown v. Maloney, 267 F.3d 36, 44 (1st Cir. 2001). Article I of the United States Constitution prohibits the states from passing any "*ex post facto* law." An *ex post facto* law is a law that, *inter alia*, deprives a criminal defendant "of any defense available according to law at the time when the act was committed." Beazell v. Ohio, 269 U.S. 167, 169-70, 46 S. Ct. 68, 69-70 (1925). See also California Dep't of Corr. v. Morales, 514 U.S. 499, 504-05, 115 S. Ct. 1597, 1601 (1995). A jury instruction that effects a judicial change in the applicable law violates the prohibition against *ex post facto* laws. See Morales, 514 U.S. at 504, 115 S. Ct. at 1600-01; Murtishaw v. Woodford, 255 F.3d 926, 961 (9th Cir. 2001). Because the Arizona state courts' conclusion that the trial court properly instructed the jury on the relevant constraints of the applicable statute is binding on this Court, Petitioner has not established that his right to be free of an *ex post facto* law was violated.

---

shall not do any of the following:
    1. Enter an occupied residential structure without the consent of the occupants who are present at the time of the entry.
198 Ariz. at 37, 6 P.3d at 342.

-25-

Accordingly, Petitioner is not entitled to federal habeas relief on this claim.

Additionally, a federal habeas petitioner is ordinarily not entitled to habeas relief based on the "correctness" of jury instructions because a claim that a jury instruction was an erroneous statement of state law is not an allegation of the deprivation of a federal right. See, e.g., Estelle, 502 U.S. at 68, 72, 112 S. Ct. at 480 (stating that a jury instruction which allegedly violates state law can be the basis of federal habeas relief only when the instruction "so infected the entire trial that the resulting conviction violates due process"); Engle, 456 U.S. at 119, 102 S. Ct. at 1567. A petitioner's mere assertion that a jury instruction error violated their right to due process does not render the claim a federal constitutional claim. See, e.g., Poland v. Stewart, 169 F.3d 573, 584 (9th Cir. 1999) (concluding a habeas petition may not "transform a state law issue into a federal one merely by asserting a due process violation."); Durr v. Mitchell, 487 F.3d 423, 446-47 (6th Cir. 2007).

**2. Petitioner contends his right to have a jury determine his guilt was violated. Petitioner contends the judge's jury instructions removed an acquittal from the jury's options because the jury instruction allowed no justification or reasonable belief defense to the charge of burglary and, accordingly, first-degree felony murder.**

With regard to the rights of a bail bond surety's agent to arrest a bail absconder, the trial court instructed the jury, over defense counsel's objection, as follows:

-26-

> Now when bail is given, a defendant in a criminal case is regarded as delivered to the custody of the sureties. Whenever the sureties choose to do so, they may arrest the defendant and surrender him. For the purpose of surrendering a defendant, a surety on the bail bond of the defendant may arrest him before the forfeiture of the undertaking, or by written authority endorsed on a certified copy of the undertaking, may empower any adult person of suitable discretion to do so. In other words, the surety may exercise their rights in person or by agent. They may pursue the defendant into another state to arrest him and, if necessary, may break and enter the defendant's house, *but not some third person's*, for that purpose.

Answer, Exh. J at 8 (emphasis added).

In his direct appeal Petitioner argued the emphasized portion of this instruction stating a third-party's home may not be entered to arrest a bail absconder was not a correct statement of the state law in effect at the time of the incident giving rise to the charges against him. Petitioner asserted the relevant statute did not, at that time, express specific restrictions or limitations regarding entry into a third-party's home to arrest a bail absconder. Petitioner "objected to the insertion of the words 'but not some third person' because no Arizona Court had ever interpreted A.R.S. § 13-3885 to exclude entry into the home of a third party." Id., Exh. G at 17. Petitioner further asserted in his direct appeal that including this language violated his right to due process of law and his Sixth Amendment right to a verdict rendered by a jury. Id., Exh. G at 16.

As stated *supra*, the Arizona Court of Appeals determined the trial court had properly instructed the jury with

-27-

regard to the law applicable at the time of Petitioner's acts. The Arizona Court of Appeals concluded Petitioner's argument regarding the statute, i.e., that it could not be read to include the prohibition against entering the home of a third party, ignored "the reality that other [state] statutes authorizing arrests by peace officers and private persons likewise do not include specific limitations on these arrest powers," but nonetheless limit the arrest powers of peace officers and private persons. Id., Exh. J at 9-10. The Arizona Court of Appeals concluded that, under the version of the statute in effect in 1997, a bail surety agent could not "break into" a building to arrest a bail absconder unless the absconder had committed a felony in the agent's presence. Id., Exh. J at 10. "As the applicable Arizona law is clear that a private person was not authorized to break into a third party's house under the circumstances in the present case, there was no error in the instruction given by the trial court." Id., Exh. J at 10.

Respondents contend Petitioner only alluded to this due process claim in his direct appeal. Accordingly, Respondents argue, Petitioner failed to "fairly present" this ground for relief as a specific due process claim premised on alteration of the burden of proof.

Petitioner did not fairly present this federal habeas claim to the state courts in a procedurally correct manner. See Anderson v. Harless, 459 U.S. 4, 6, 103 S. Ct. 276, 276 (1982);

<u>Castillo</u>, 399 F.3d at 999;[6] <u>Peterson v. Lampert</u>, 319 F.3d 1153, 1157 (9th Cir. 2003); <u>Shumway v. Payne</u>, 223 F.3d 982, 987-88 (9th Cir. 2000); <u>Joubert v. Hopkins</u>, 75 F.3d 1232, 1240 (8th Cir. 1996) (concluding the petitioner must present the same legal theory, not just the same facts, to exhaust a claim). <u>Cf.</u> <u>Tigner v. Cockrell</u>, 264 F.3d 521, 526-27 (5th Cir. 2001) (finding a federal habeas claim had not been fairly presented when the petitioner had objected to expert witness testimony on evidentiary grounds, not on constitutional grounds).

Petitioner has procedurally defaulted this claim by not fairly presenting it to the state courts in a procedurally correct manner. Petitioner has not shown cause nor prejudice regarding his procedural default of his claim. Because Petitioner has not established cause and prejudice regarding his procedural default of this due process claim, the Court may not grant relief on the merits of the claim. <u>See</u>, <u>e.g.</u>, <u>Bargas v.</u>

---

[6] In <u>Castillo</u>, the Ninth Circuit stated:

... we have held that citation to either a federal or state case involving the legal standard for a federal constitutional violation is sufficient to establish exhaustion. []; <u>Peterson v. Lampert</u>, 319 F.3d 1153, 1158 (9th Cir. 2003) (en banc) ("[F]or purposes of exhaustion, a citation to a state case analyzing a federal constitutional issue serves the same purpose as a citation to a federal case analyzing such an issue."). ...

Mere general appeals to broad constitutional principles, such as due process, equal protection, and the right to a fair trial, do not establish exhaustion. [] Nor is it enough to raise a state claim that is analogous or closely similar to a federal claim.

399 F.3d at 999 (internal citations and quotations omitted and emphasis added).

<u>Burns</u>, 179 F.3d 1207, 1215 (9th Cir. 1999).

**3.  Petitioner  contends  his  right  to  be  presumed innocent  was  violated  because  the  trial  court  did  not  require the  prosecution  to  establish  each  element  of  the  offense  of conviction beyond a reasonable doubt.**

Respondents argue:

> Petitioner contends that the surety instruction relieved the prosecution of its burden of proving the unlawful entry element of burglary. [] Petitioner asserts that he raised the federal constitutional basis for this claim on direct appeal, but his retroactive interpretation objection to the surety instruction did not encompass this federal basis. [] In fact, Petitioner only alluded to this ground for relief in contending that trial counsel were ineffective for failing to present a "legal entry" defense. []
> The trial court addressed the ineffective assistance of counsel claim, and did not separately address the correctness of the surety instruction. [] Accordingly, Petitioner has failed to substantively exhaust this claim. Petitioner did not "fairly present" this ground for relief as a violation of the Fifth Amendment.

Docket No. 24 at 21.

Petitioner has procedurally defaulted this claim by not fairly presenting it to the state courts in a procedurally correct manner. Petitioner has not shown cause nor prejudice regarding his procedural default of this claim. Because Petitioner has not established cause and prejudice regarding his procedural default of this claim, the Court may not grant relief on the merits of the claim. <u>See</u>, <u>e.g.</u>, <u>Bargas</u>, 179 F.3d at 1215; <u>Beard v. Pruett</u>, 134 F.3d 615, 619 (4th Cir. 1999) ("The exhaustion requirement is not satisfied if the petitioner presents new legal theories or factual claims for the first time

1  in his federal petition."); <u>Joubert</u>, 75 F.3d at 1240 (holding

2  the petitioner must present the same legal theory, not just the

3  same facts, to exhaust his habeas claim).

4          **4.   Petitioner maintains the trial court failed to
5  properly instruct the jury because it did not include an
   instruction on a "justification" defense, "blighting the whole
6  trial" and rendering the resulting convictions in violation of
   Petitioner's constitutional rights.**

7          Respondents aver this claim has not been properly

8  exhausted because Petitioner did not present the federal

9  constitutional basis for this claim to the state courts, i.e.,

10 that "Petitioner had only contended that the abridged

11 instruction 'substantially diminished' his ability to assert

12 that his conduct was justified."   Docket No. 24 at 22.

13 Regardless of whether Petitioner substantively exhausted this

14 claim, it may be denied on the merits.

15         The right to due process of law encompasses the right

16 to present a "complete" defense.   "Due process requires that

17 criminal prosecutions 'comport with prevailing notions of

18 fundamental fairness" and that "criminal defendants be afforded

19 a meaningful opportunity to present a complete defense.'"   <u>Clark</u>

20 <u>v. Brown</u>, 442 F.3d 708, 714 (9th Cir.), <u>cert. denied</u>, 127 S. Ct.

21 555 (2006), <u>quoting</u> <u>California v. Trombetta</u>, 467 U.S. 479, 485,

22 104 S. Ct. 2528, 2532 (1984).   Habeas relief may be predicated

23 on the state trial court's failure to "instruct on the defense

24 theory of the case ... if the [defense] theory is legally sound

25 and evidence in the case makes it applicable."   <u>Beardslee v.</u>

26 <u>Woodford</u>, 358 F.3d 560, 577 (9th Cir. 2004).   <u>See also</u> <u>Bradley</u>

27 <u>v. Duncan</u>, 315 F.3d 1091, 1098 (9th Cir. 2002) (holding the

28                              -31-

right to present a complete defense would be "empty" if it did not encompass the right to a jury instruction regarding a legitimate defense).

> When habeas is sought under 28 U.S.C. § 2254, failure to instruct on the defense theory of the case is reversible error if the theory is legally sound and evidence in the case makes it applicable.... A habeas petitioner must show that the alleged instructional error had substantial and injurious effect or influence in determining the jury's verdict.

Clark, 442 F.3d at 714 (internal citations and quotations omitted).

Accordingly, to succeed on a federal habeas claim that a state court violated the petitioner's due process rights by omitting a proposed jury instruction requires a showing that the error "so infected the entire trial that the resulting conviction violate[d] due process." Henderson v. Kibbe, 431 U.S. 145, 154, 97 S. Ct. 1730, 1736 (1977). Additionally, a state trial court's finding that the evidence does not support a defense available by operation of state law is entitled to a presumption of correctness on federal habeas review. See, e.g., Menendez, 422 F.3d 1012, 1029 (9th Cir. 2005); Hartman, 120 F.3d at 161.

Petitioner did get a justification instruction, however, the justification instruction was not the one he wanted. Answer, Exh. G at 22-23. The Arizona courts' interpretation of Arizona statutes as stated in the form of jury instructions, i.e., that Petitioner had not established he was entitled to an instruction on his proffered defense, is presumed

-32-

correct by this Court.   And, as stated *supra*, a claim that a trial court gave a jury instruction erroneous as to state law does not state a claim that the petitioner's constitutional rights were violated.   The state court's conclusion that Petitioner was not, as a matter of state law, entitled to a jury instruction that his entry into the victims' home could be legally justified by the existence of the expired bail warrant for Mr. Alcantar, is entitled to a presumption of correctness. Accordingly, Petitioner is not entitled to federal habeas relief on his claim that the trial court erred by not giving the jury a justification instruction.

**5.   Petitioner avers the trial court erred by failing to dismiss the allegedly duplicitous murder charges in the indictment.**

Count I and Count II of the indictment against Petitioner asserted he was guilty of first-degree felony murder or, in the alternative, second-degree murder.   Petitioner raised this claim in his direct appeal.   The Arizona Court of Appeals concluded the indictment was not duplicitous because it charged the first two counts in the alternative.

Duplicity in an indictment occurs when two or more separate offenses are joined in a single count.   See, e.g., Schad, 501 U.S. at 631, 111 S. Ct. at 2496-97.   An indictment is not duplicitous, however, when it alleges alternative means of committing a single crime.   Id.   Accordingly, the Arizona Court of Appeals' decision was not clearly contrary to federal law and Petitioner is not entitled to federal habeas relief on this claim.

1        **6.   Petitioner  asserts  that  forcing  him  to  wear  a
**"shock belt" during his jury trial violated his rights pursuant
2  **to the Fifth, Sixth, Eighth, and Fourteenth Amendments to the
United States Constitution.**

3

4        In his amended habeas petition, Petitioner asserts:

5        [T]he  trial  court  allowed  MCSO  to  force
         Sanders to wear a shock-belt to physically
6        restrain  him  at  jury  trial.   The  court  did
         this   notwithstanding   the   fact   that   no
7        compelling  circumstance  required  Sanders  to
         be restrained to maintain courtroom security.
8        Rather  the  court  failed  to  exercise  close
         judicial  scrutiny  of  the  Sheriff's  hi-tech
9        binding and gagging of Sanders with a shock-
         belt,   which   led   to   the   following
10       constitutional  consequences.
         Sanders  had  a  right  to  be  present  at  his
11       trial  so  as  to  assist  in  his  own  defense.
         This  right  included  "hearing"  the  testimony
12       of  witnesses,  conferring  with  his  counsels,
         and being an active member of his own defense
13       team.   Additionally,  he  had  the  right  to
         testify on his own behalf, and to display his
14       natural demeanor to jurors.
         As  a  hearing  disabled  person  who  wears
15       hearing aids, Sanders must employ an array of
         mitigating conduct to "hear" what is going on
16       and said.   For example, he must see speaker's
         faces  and  body  language,  then  contextually
17       add these to what he actually hears to make
         speech intelligible to him.   Due to the above
18       stated   refusal   of   the   trial   court   to
         reasonably   accommodate   Sanders'   hearing
19       disability and the constant threat of being
         shocked during trial if he physically moved
20       to  mitigate  his  hearing  impairment;  (sic)
         Sanders  was  unable  to  intelligibly  "hear"
21       witnesses, prosecutors, the court, or defense
         counsel.   Accordingly,  throughout  trial  he
22       could not assist in his own defense... These
         deprivations  were  the  direct  result  of  the
23       psychological consequences of being forced to
         wear a shock-belt during jury trial....
24       But  for  the  foisting  of  a  shock-belt  upon
         him, Sanders would have testified in his own
25       behalf.

26  Docket No. 5 at 94-96.

27

28                                -34-

Petitioner asserts, *inter alia*, that if he had testified he "would have shown jurors that he had scrupulously adhered to police procedures and that was the norm for him during his bail enforcement activities." Id. at 97. Petitioner contends his testimony "would have deprived prosecutors of their [] uncontested arguments that Sanders was reckless and was not acting as a bail agent." Id. Petitioner further asserts the shock-belt was physically painful, and that the "shock-belt's outline was visible through his trial clothes ... [and] negatively altered his demeanor before jurors." Id.

The Arizona Superior Court concluded this claim was precluded as waived by Petitioner's failure to raise the claim in his direct appeal.[7] The state court's conclusion that the

--------

[7] Petitioner asserted in his second action for post-conviction relief that his claim was not precluded because it was based on a newly-issued decision of the Ninth Circuit Court of Appeals in Gonzalez v. Pliler, 341 F.3d 897, 901-02 (9th Cir. 2003). Previous federal court opinions resolving habeas claims dealt primarily with the use of shackles during a criminal jury proceeding. In Gonzalez, the Ninth Circuit Court of Appeals reviewed the use of a shock-belt, which is worn on the inside of the defendant's clothing.

> a decision to use a stun belt must be subjected to at least the same close judicial scrutiny required for the imposition of other physical restraints." Durham, 287 F.3d at 1306 (citations and internal quotation marks omitted). And for these reasons, before a court may order the use of physical restraints on a defendant at trial, "the court must be persuaded by compelling circumstances that some measure [is] needed to maintain the security of the courtroom," and, as noted, "the court must pursue less restrictive alternatives before imposing physical restraints."...
> ***
> The record clearly demonstrates that the trial court failed to adhere to the relevant constitutional standards in forcing the defendant to wear the restraint. First, the decision to

-35-

claim was procedurally barred constitutes an adequate and independent basis for refusing federal habeas relief on this claim and, accordingly, the claim may not provide a basis for relief.

Alternatively, the Court concludes the claim may be denied on the merits. To succeed on this type of claim, the habeas petitioner must show that the physical restraints "had substantial and injurious effect or influence in determining the jury's verdict..." Rhoden v. Rowland, 172 F.3d 633, 636 (9th Cir. 1999); see also Holbrook v. Flynn, 475 U.S. 560, 568-69, 106 S. Ct. 1340, 1345 (1986). To prevail on a claim of this nature in a federal habeas petition, the Court must conclude the defendant was indeed physically restrained in the presence of the jury and that the jury saw or was aware of the restraint and that the physical restraint was not justified by state interests. See Ghent v. Woodford, 279 F.3d 1121, 1132 (9th Cir. 2002). Additionally, for unjustified restraint to rise to the level of a constitutional trial error, the petitioner must make a showing that he suffered prejudice as a result of the

force the defendant to wear the stun belt during trial was not made by the Court in the first instance; it was made by correctional officers....
   None of the articulated reasons provides an adequate basis for depriving a defendant of his constitutional right to attend trial free of physical restraints. Gonzalez did not create any disturbance at trial. He did not try to escape. He made no threats. Despite this, the trial court did not even hold an evidentiary hearing before ordering the use of the belt. This procedure did not satisfy the safeguards required by the Constitution.

shackling.  See id.; Gonzalez, 341 F.3d at 903.  See also Dyas
v. Poole, 317 F.3d 934, 936-37 (9th Cir. 2003).  In Rhoden, the
Ninth Circuit emphasized prejudice arises not from the restraint
but from the jury's awareness of the restraint.  See 172 F.3d at
636 ("when the defendant's shackling was not actually seen by
the jury during the trial, we have held that the shackling was
harmless error").  Similarly, in Dyas, the Ninth Circuit stated
prejudice was "particularly likely" when the restraints were
visible to the jury.  317 F.3d at 936-37.  Cf. United States v.
Howard, 480 F.3d 1005, 1012 (9th Cir. 2007) (evaluating the
constitutionality of shackling individuals making an initial
appearance before a federal magistrate judge).

        Petitioner has not asserted constitutional prejudice
arising from the imposed shock-belt.  Petitioner does not assert
the jury was aware of the shock-belt, i.e., aware the trial
court had determined Petitioner needed to be restrained, which
would constitute prejudice.  Accordingly, Petitioner has not
asserted constitutional prejudice as a result of the decision to
require him to wear a shock-belt.  Although Petitioner contends
wearing the shock-belt was the reason he chose not to testify,
the proffered testimony regarding the reasonableness of
Petitioner's actions was presented to the jurors through the
defense witness, Mr. Garrelts.  Furthermore, the Court finds it
completely unbelievable that, absent the presence of the shock-
belt, Petitioner would have chosen to take the stand and face
potential cross-examination regarding his extensive prior
criminal convictions.

Because the Arizona state courts' denial of this claim rests on an adequate basis, independent of federal law, to deny relief, Petitioner is not entitled to consideration of the merits of this claim. Additionally, Petitioner is not entitled to habeas relief on the merits of the claim because he has not established prejudice from the use of the shock belt arising to the level of a constitutional violation.

**7. Petitioner contends his right to confidential attorney-client communications was violated by the surreptitious recording and eavesdropping upon his attorney-client meetings and legal telephone conversations by jail officials. Petitioner argues these acts violated his rights pursuant to the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.**

A criminal defendant's Sixth Amendment right to the effective assistance of counsel has been interpreted to include a limited right to confidential communication with counsel. See, e.g., Weatherford v. Bursey, 429 U.S. 545, 558-59, 97 S. Ct. 837, 845 (1977). The United States Supreme Court held in Weatherford that, in some circumstances, a defendant's Sixth Amendment rights might be violated by the state's direct interference with the attorney-client relationship. Id. (concluding the Constitution was not violated where the interference was not purposeful, did not result in the introduction of tainted evidence, and did not result in the disclosure of defense strategy to the prosecution). However, the Supreme Court expressly rejected a *per se* rule that a defendant's Sixth Amendment right was violated solely by such an intrusion. See id., 429 U.S. at 550-51, 554-58.

1    Several of the United States Circuit Courts of Appeal,
2    including the Ninth Circuit, have concluded that the state's
3    deliberate interference with communications between a defendant
4    and his counsel, which interference prejudices the defendant,
5    violates the defendant's Sixth Amendment right to the effective
6    assistance of counsel in criminal proceedings.  See Williams v.
7    Woodford, 384 F.3d 567, 584-85 (9th Cir. 2004) (concluding a
8    habeas petitioner would be entitled to relief on a claim of
9    "improper interference" only if they established "substantial"
10   prejudice), cert. denied, 126 S. Ct. 419 (2005); Clutchette v.
11   Rushen, 770 F.2d 1469, 1471 (9th Cir. 1985); Shillinger v.
12   Haworth, 70 F.3d 1132, 1134-36, 1140-42 (10th Cir. 1996).[8]
13   "Substantial prejudice results from the introduction of evidence
14   gained through the interference against the defendant at trial,
15   from the prosecution's use of confidential information
16   pertaining to defense plans and strategy, and from other actions
17   designed to give the prosecution an unfair advantage at trial."
18   Williams, 384 F.3d at 585.
19
20   _____
21       [8]
22       The Third Circuit has adopted the rule that
         intentional intrusions by the prosecution
         constitute per se violations of the Sixth
23       Amendment.  [] The Second and District of
         Columbia Circuits, ... have recognized that
24       prejudice may not be required when an intrusion
         is intentional, but have not specifically
25       decided.[]. The First, Sixth, and Ninth Circuits
         have held that something beyond the intentional
26       intrusion itself is required to rise to the level
         of a Sixth Amendment violation.
27   Shillinger, 70 F.3d at 1140-41.
28                                   -39-

1          Petitioner asserts "an agent of the State attempted to
2    intimidate Sanders' lead counsel by confronting her regarding
3    the frequency and duration of her pre-trial attorney-meetings
4    with Sanders.  The State admits to monitoring Sanders and his
5    counsel's legal visits."   Docket No. 5 at 99.   Petitioner
6    asserts  his  post-trial  communications  with  counsel  were
7    recorded.  Id.  Petitioner further contends the trial court and
8    prosecutors "were aware of the jail's recording of Sanders'
9    legal calls." Id. at 100.  However, Petitioner does not assert
10   that any "surveillance" of his attorney-client communications
11   resulted in the introduction of unfavorable evidence at his
12   trial  or  sentencing  proceedings,  or  that  the  state  took
13   advantage  of  any  trial  or  sentencing  strategy  revealed  as  a
14   result  of  any  surveillance.   Accordingly,  Petitioner  has  not
15   alleged  the  type  of  substantial  prejudice  from  the  state's
16   interference with his communication with counsel which would
17   allow  the  Court  to  conclude  the  interference  resulted  in  a
18   violation of Petitioner's Sixth Amendment rights and Petitioner
19   is not entitled to habeas relief with regard to this claim.
20          **8.   Petitioner contends that the State of Arizona**
     **violated 18 U.S.C. § 2511(1) by intercepting his communications**
21   **with his counsel without either a court order or consent.**

22          Petitioner did not raise this claim in his direct
23   appeal or in his actions for post-conviction relief.   Although
24   Petitioner argued in the state courts that his convictions
25   should be vacated because of the recording of his attorney-
26   client communications, he did not argue this same legal
27   predicate for this claim, i.e., that the recordings violated a
28                                  -40-

specific federal statute. The exhaustion requirement is not satisfied where the petitioner presents a new legal theory in his federal habeas petition. See Anderson, 459 U.S. at 6-7, 103 S. Ct. at 277-78; Picard v. Connor, 404 U.S. 270, 275-76, 92 S. Ct. 509, 512 (1971). Because the claim was not fairly presented to the state courts and is now procedurally barred, and Petitioner has not shown cause for, nor prejudice arising from his procedural default of the claim, relief may not be awarded on the claim.

Additionally, the claim may be denied on the merits because the violation of a federal statute by the state in the course of criminal proceedings does not constitute a *per se* violation of the defendant's federal constitutional right to due process of law. See Reed v. Farley, 512 U.S. 339, 354, 114 S. Ct. 2291, 2300 (1994); Hill v. United States, 368 U.S. 424, 428, 82 S. Ct. 468, 471 (1962); Lord v. Lambert, 347 F.3d 1091, 1094 (9th Cir. 2003) (concluding an alleged violation of a federal statute governing the interception of cordless telephone conversations did not constitute a constitutional violation absent a showing of a miscarriage of justice). The violation of a statute does not provide a basis for concluding the defendant's constitutional rights were violated absent a showing of a resulting "fundamental defect" in the defendant's criminal proceedings, which results in a miscarriage of justice. See Reed, 512 U.S. at 354, 114 S. Ct. at 2300. Petitioner has made no such showing and, accordingly, he is not entitled to federal habeas relief on the merits of this claim.

-41-

1        **9. Petitioner asserts the trial court unduly inhibited
his ability to cross-examine a government witness, Mr. Timms, as
2    to his credibility.**

3            During Mr. Timms' testimony at Petitioner's trial, when

4    Mr. Timms was asked by Petitioner's counsel on cross-examination

5    if he had lied to his defense counsel regarding the defendants'

6    true intent on the night in question, Mr. Timms' counsel

7    objected and invoked attorney-client privilege.  <u>See</u>, <u>e.g.</u>,

8    Answer, Exh. G at 6-7.

9            Petitioner raised a claim in his state proceedings that

10   his rights were violated by the curtailment of questions to Mr.

11   Timms on cross-examination.  <u>Id.</u>, Exh. G.  In denying this

12   claim, the Arizona Court of Appeals concluded:

13               On appeal, [Petitioner] challenges the trial
                 court's ruling regarding the assertion of the
14               attorney-client privilege on two separate
                 grounds.  First, he claims that the privilege
15               was never properly invoked because it had
                 been waived by the plea agreement and because
16               it was not asserted by Timms, but by his
                 counsel.  However, we find nothing in the
17               plea agreement that constitutes a waiver of
                 the attorney-client privilege with respect to
18               Timms' conversation with his current counsel.
                 In addition, although Timms never expressly
19               asserted his privilege on the record, all
                 parties, including the defendant, proceeded
20               on the understanding that the privilege had
                 been invoked.  If [Petitioner] had desired to
21               raise a question concerning whether the
                 privilege had been properly invoked by Timms,
22               that issue could have been easily resolved in
                 the trial court without any difficulty or
23               delay.  The failure by [Petitioner] to raise
                 this issue in the trial court constitutes
24               waiver of the issue on appeal.[]

25   <u>Id.</u>, Exh. J at 16.

26           Petitioner raised this claim in the state courts, which

27   concluded the claim was precluded as waived.  The state courts'

28                                    -42-

conclusion that Petitioner waived this claim for failure to contemporaneously object constitutes the application of an adequate and independent state procedural rule barring federal review of the claim on the merits.  See Coleman, 501 U.S. at 729, 111 S. Ct. at 2553-54; Harris v. Reed, 489 U.S. 255, 261-62, 109 S. Ct. 1038, 1042 (1989) (holding that the state court must actually have relied on the procedural bar as an independent basis for its disposition of the case to preclude habeas review); Poland, 169 F.3d at 585; Correll, 137 F.3d at 1417; Quintero v. Stewart, 121 Fed. App. 203, 205 (9th Cir. 2005).

Alternatively, the claim may be denied on the merits. The Arizona Court of Appeals concluded that any error regarding the ability to cross-examine Mr. Timms was harmless.

"Whether rooted directly in the Due Process Clause of the Fourteenth Amendment, or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." Crane v. Kentucky, 476 U.S. 683, 690, 106 S. Ct. 2142, 2147 (1986) (internal citations and quotations omitted). However, state trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on the cross-examination of witnesses. See, e.g., King v. Trippett, 192 F.3d 517, 524 (6th Cir. 1999).

Alleged violations of the Confrontation Clause raised in a section 2254 petition are subject to harmless error review. See Coy v. Iowa, 487 U.S. 1012, 1021-22, 108 S. Ct. 2798, 2803

-43-

(1988); <u>Delaware v. Van Arsdall</u>, 475 U.S. 673, 682, 106 S. Ct. 1431, 1437 (1986).  Accordingly, Petitioner would be entitled to habeas relief on the merits of this claim only if he could establish that curtailing Mr. Timms' cross-examination had a substantial and injurious effect or influence in determining the jury's verdict.  <u>See</u> <u>Barajas v. Wise</u>, 481 F.3d 734, 741 (9th Cir. 2007).

Petitioner was afforded a meaningful opportunity to present a complete defense, including the opportunity to meaningfully challenge the prosecution's theory of the case, i.e., that Petitioner's intent was not to enforce a bail bond regarding Mr. Victor Alcantar, but to burglarize a residence. Petitioner's counsel was able to cross-examine Mr. Timms regarding his credibility and regarding his fluid statements to others as to Petitioner's motives for entering the home. Petitioner's counsel was able to cross-examine Mr. Timms regarding the fact that Mr. Timms had changed his story regarding the defendants' intent before the grand jury and that Mr. Timms had received a promise of leniency for his testimony. Accordingly, Petitioner was not deprived of his right to confront a witness before the court nor the opportunity to present a complete defense in this regard and he is not entitled to federal habeas relief on this claim.  <u>See</u> <u>Holmes v. South Carolina</u>, 547 U.S. 319, 126 S. Ct. 1727, 1732 (2006); <u>Crane</u>, 476 U.S. at 689-90, 106 S. Ct. at 2146; <u>Van Arsdall</u>, 475 U.S. at 679, 106 S. Ct. at 1435.

-44-

**10. Petitioner maintains admission of Mr. Timms' testimony about Petitioner's alleged prior bad acts violated his constitutional rights because the evidence was admitted without the trial court first considering the evidence pursuant to Arizona Rules of Evidence 401-404.[9]**

Petitioner challenged the admission of testimony from Mr. Timms regarding statements made by Petitioner prior to the night in question about his intent in entering the home. Petitioner also challenged Mr. Timms' testimony that he and Petitioner used methamphetamine on one occasion when they discussed the alleged burglary.

The Arizona Court of Appeals denied this claim, holding the "other act" evidence was intrinsic to the charges against Petitioner and, accordingly, that admitting the evidence did not violate the applicable state evidentiary rule. The Arizona Court of Appeals did conclude that testimony regarding methamphetamine use should have been excluded, however, the appellate court further determined the admission of the testimony regarding this one act was harmless.

Petitioner alleges the error in allowing the other act testimony by Mr. Timms deprived him of due process because it violated a state rule of evidence. A state court's alleged failure to follow a state procedural rule is not a *per se*

---

[9] Rule 404 provides:
Except as provided in Rule 404(c) evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

-45-

violation of the defendant's federal right to due process of law.  See Carter v. McCarthy, 806 F.2d 1373, 1376 n.2 (9th Cir. 1986); Wayne v. Raines, 690 F.2d 685, 687 (9th Cir. 1982).  The improper admission of evidence, which a habeas petitioner contends was unduly prejudicial, has violated the petitioner's right to due process only when there were no permissible inferences the jury could have drawn from the evidence.  See Windham v. Merkle, 163 F.3d 1092, 1103 (9th Cir. 1998) ("whether or not the admission of evidence is contrary to a state rule of evidence, a trial court's ruling does not violate due process unless the evidence is 'of such quality as necessarily prevents a fair trial.'").

There were permissible inferences the jury could have drawn from the evidence regarding the Mr. Timms and Petitioner's discussions prior to the break-in; indeed, the testimony was the primary evidence regarding Petitioner's intent in entering the home.  With regard to the evidence of methamphetamine use, the admission of the challenged evidence did not deny Petitioner a fundamentally fair trial because the right to due process has never been held to include the exclusion of "bad acts" evidence.  See Alberni v. McDaniel, 458 F.3d 860, 864 (9th Cir. 2006); Bugh v. Mitchell, 329 F.3d 496, 512 (6th Cir. 2003) ("There is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence."); Coleman v. Mitchell, 268 F.3d 417, 439 (6th Cir. 2001) (stating in reference to habeas corpus challenge to admission of other-acts evidence that

1  "[s]tate court evidentiary rulings do not rise to the level of

2  due process violations unless they offend some principle of

3  justice so rooted in the traditions and conscience of our people

4  as to be ranked as fundamental."). Accordingly, Petitioner is

5  not entitled to federal habeas relief on this claim.

6      **11. Petitioner asserts his right to due process of law
was violated because the trial court prohibited him from
7  exercising his rights to "confrontation, compulsory process, and
a meaningful opportunity to present a complete defense".**

8

9      Petitioner contends that the trial court improperly

10  curtailed his cross-examination of two law enforcement officer

11  witnesses, depriving him of his right to confront witnesses

12  against him and his right to present a complete defense. During

13  trial, Petitioner's counsel sought to elicit testimony from

14  these witnesses regarding law enforcement's use of bullet-proof

15  vests and forcible entry regulations incumbent on law

16  enforcement agents. Answer, Exh. G at 33. The trial court

17  precluded the further cross-examination of officers Moissonier

18  and Wood regarding the use of bullet-proof vests and operational

19  tactics because the trial court determined it was irrelevant.

20  Id., Exh. J at 18.

21      Respondents assert this claim was not exhausted in the

22  state courts because it was not fairly presented as a federal

23  constitutional claim.[10] However, the claim may be denied on the

24  ────────────────────

25      [10] In his direct appeal Petitioner argued his inability to
cross-examine the officers on these issues violated his constitutional
26  right to due process of law and to confront witnesses against him.
Answer, Exh. G at 33-38. The Arizona Court of Appeals concluded it
was not an abuse of the trial court's discretion to limit the cross-
27  examination, agreeing that evidence regarding the tactics used for

28                                  -47-

merits regardless of any failure to properly exhaust the claim.

Petitioner's right to due process does not encompass a right to cross-examination of prosecution witnesses when the testimony would not be relevant to the question before the fact-finder.   See Holmes, 126 S. Ct. at 1732; Crane, 476 U.S. at 689-90, 106 S. Ct. at 2146; Van Arsdall, 475 U.S. at 679, 106 S. Ct. at 1435.   Petitioner's right to present evidence, even in the form of cross-examination of adversary witnesses, is not absolute.   Although the right to present a defense is "fundamental," "the state's legitimate interest in reliable and efficient trials is also compelling."   Perry v. Rushen, 713 F.2d 1447, 1450-51 (9th Cir. 1983).   See also Alcala v. Woodford, 334 F.3d 862, 877 (9th Cir. 2003); Whelchel v. Washington, 232 F.3d 1197, 1204 (9th Cir. 2000).

As noted *supra*, "the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense."   Crane, 476 U.S. at 690, 106 S. Ct. at 2146.   A defendant's due process rights are violated by the exclusion of evidence if the precluded evidence, if introduced, would have created "a reasonable doubt that did not exist without the evidence."   Richmond v. Embry, 122 F.3d 866, 872 (10th Cir. 1997) (citing United States v. Valenzuela-Bernal, 458 U.S. 858, 868, 102 S. Ct. 3440, 3447 (1982)); Patton v. Mullin, 425 F.3d

bail recovery would be relevant, but evidence regarding certified law enforcement officer procedures would not be relevant and so it could be properly excluded.   See Answer, Exh. J at 18.   The Court of Appeals concluded: "Although wide latitude is granted on cross-examination, a party does not have a license to run at large or to introduce irrelevant testimony."   Id., Exh. J at 18.

788, 798 (10th Cir. 2005).    However, the right to present evidence in one's defense is not unlimited.    State rules which operate to exclude evidence from criminal trials do not abridge a defendant's right to present a complete defense to the charges against him if the rules are not arbitrary or "disproportionate to the purposes they are designed to serve." United States v. Scheffer, 523 U.S. 303, 308, 118 S. Ct. 1261, 1264 (1998) (internal citations and quotations omitted).    "[W]here constitutional rights directly affecting the ascertainment of guilt are implicated, [evidentiary rules] may not be applied mechanistically to defeat the ends of justice." Chambers v. Mississippi, 410 U.S. 284, 302, 93 S. Ct. 1038, 1049 (1973).

Petitioner has not established that his right to present a complete defense against the charges against him was violated by the limitation on the law-enforcement officers' testimony.    The evidence was not relevant.    Accordingly, Petitioner is not entitled to habeas relief on this claim.

**12.  Petitioner contends his "right to present a defense" was violated by the trial court's preclusion of expert testimony about fight or flight syndrome.**

Petitioner proposed to offer testimony by an expert concerning how human beings react when confronted with extraordinary circumstances or when they perceive a lethal threat.    The state filed a motion in limine to preclude this testimony arguing it was not proper expert testimony pursuant to Rule 702, Arizona Rules of Evidence.    The trial court ruled the proffered expert testimony should not be admitted because it was not a proper subject for expert testimony.    In his direct

appeal, Petitioner asserted that excluding this witness violated his right to present a complete defense.  Answer, Exh. G at 39-43.  In support of this argument Petitioner cited _Logerquist v. McVey_, 196 Ariz. 470, 1 P.3d 113 (2000), a case decided after Petitioner's conviction, maintaining that testimony on human behavior is properly the subject of expert testimony.

The Arizona Court of Appeals denied this claim in Petitioner's direct appeal.  The appellate court noted the Arizona evidentiary rule provided expert testimony was admissible if the trial court deemed it would assist the trier of fact.  Answer, Exh. J.  The appellate court also noted that, pursuant to Arizona law, the use of physical or deadly force in self-defense is governed by a reasonableness standard, which it determined was properly a question for the jury absent expert testimony.  _Id._, Exh. J.

> The manner in which a person responds to a stressful circumstance invoking the 'fight or flight' syndrome is something well within the common experience of all persons.  [] Hence, we find no abuse of discretion in the trial court's decision to exclude the proffered testimony concerning how people react in such circumstances.

_Id._, Exh. J at 21-22.

The issue presented was raised in the state courts as a matter of state law and the proper application of a state rule of evidence, and the Arizona Court of Appeals determined that, as a matter of state law, Petitioner's rights were not violated in this regard.  As stated _supra_, federal habeas relief does not lie for alleged errors of a state court's interpretation of a

1   state rule of evidence and, accordingly, Petitioner is not

2   entitled to habeas relief on this claim.

3       **13. Petitioner contends his constitutional rights were**
    **violated by the trial court's preclusion of expert testimony**
4   **about law enforcement procedures.**

5       Petitioner contends that he was denied his right to

6   present a defense by the trial court's preclusion of his

7   proffered defense expert witness on law-enforcement operational

8   procedures.   In his direct appeal Petitioner asserted the

9   exclusion of this witness violated his right to present a

10  complete defense.   The Arizona Court of Appeals concluded this

11  evidence was irrelevant and, accordingly, that Petitioner's

12  rights were not violated by the exclusion of the evidence.

13      Respondents allow that the claim is exhausted, but

14  assert habeas relief is not available based on this claim

15  because it involves the admissibility of evidence pursuant to

16  state law and does not raise a federal question.   Additionally,

17  Respondents assert there is no constitutional right to present

18  irrelevant evidence, citing <u>Wood v. Alaska</u>, 957 F.2d 1544,

19  1549-50 (9th Cir. 1992).

20      The United States Supreme Court has "found the

21  exclusion of evidence to be unconstitutionally arbitrary or

22  disproportionate only where it has infringed upon a weighty

23  interest of the accused." <u>Scheffer</u>, 523 U.S. at 308, 118 S. Ct.

24  1261.   <u>See also</u> <u>Greene v. Lambert</u>, 288 F.3d 1081, 1090 (9th Cir.

25  2002).   The Supreme Court has made clear that the erroneous

26  exclusion of critical, corroborative defense evidence may

27  violate both the Fifth Amendment due process right to a fair

28                              -51-

trial and the Sixth Amendment right to present a defense. Chambers, 410 U.S. at 294, 93 S. Ct. at 1045; Washington, 388 U.S. at 18-19, 87 S. Ct. at 1922-23.   The federal courts have concluded that the right to present a defense has been violated when the trial court's decision precluded "presentation of the substantive content of a defendant's testimony or a percipient witness' testimony," but not when the precluded evidence merely substantiates other evidence or testimony.   Greene, 288 F.3d at 1091-92.  See also Gill v. Ayers, 342 F.3d 911, 922 (9th Cir. 2003) (concluding that, where the precluded testimony was the defendant's only defense, the preclusion of the testimony violated the defendant's right to due process of law because it had a substantial and injurious effect in determining the verdict).

The evidence Petitioner sought to introduce, regarding law enforcement procedures, did not comprise the substantive content of Petitioner's defense.  The proffered expert testimony would only have been relevant as to what a reasonable law enforcement officer, as compared to a bail recovery agent, would do in an allegedly similar circumstance to that faced by Petitioner.  Petitioner was able to present evidence that a reasonable bond recovery agent would have acted as Petitioner allegedly did to enforce the bond on Mr. Alcantar.   At Petitioner's trial, defense counsel presented the testimony of a California bondsman hired to find Mr. Alcantar, who testified he had been hired to arrest Mr. Alcantar on a legitimate arrest warrant even though the bail bond on Mr. Alcantar had been

-52-

exonerated.  Answer, Exh. G at 22.

Because, at best, the excluded testimony would have supported the contention that Petitioner was posing as a law enforcement official or that he had knowledge about their procedures, the evidence would not have bolstered the credibility of Mr. Timms or Petitioner regarding their intent to execute a legitimate bail enforcement action or to engage in a burglary.  The proffered testimony was not Petitioner's "only" defense and the exclusion of the testimony did not have a substantial and injurious effect in determining the verdict. Accordingly, the exclusion of the evidence did not violate Petitioner's right to due process of law and Petitioner is not entitled to federal habeas relief on the merits of this claim.

**14. Petitioner asserts his "right to present a defense" was violated by the preclusion of codefendant Mr. Brackney's grand jury testimony under the "unavailable witness" exception.**

Petitioner sought to introduce the grand jury testimony of his codefendant, Mr. David Brackney, at his trial, to bolster his defense of a legitimate bail enforcement action.  Mr. Brackney had testified before the grand jury that the events in question were an attempt to legitimately execute a bail warrant. Petitioner sought to have this testimony admitted at his trial pursuant to a state rule of evidence, anticipating Mr. Brackney would assert a Fifth Amendment privilege against self-incrimination at Petitioner's trial if called to testify, rendering him "unavailable" as a witness.

The Arizona trial court held Mr. Brackney's grand jury testimony was not admissible pursuant to the state's evidentiary

rules because the state did not have an interest in a complete examination of Mr. Brackney during the grand jury proceedings. Answer, Exh. J at 22-23.   In denying this claim on direct appeal, the Arizona Court of Appeals noted that, at the time Mr. Brackney testified before the grand jury, the matter was still under investigation and Mr. Timms had not yet offered his changed testimony regarding the fact the incident was a home invasion robbery rather than a bail recovery.   Id., Exh. J at 22-23.   Accordingly, the appellate court concluded, the government did not, at that time, have a reason to vigorously challenge Mr. Brackney's testimony as to the intent of the codefendants and the situation did not fit the exception stated in the Arizona Rules of Evidence.

Petitioner contends in his federal habeas petition that excluding this testimony violated his rights pursuant to the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.   Respondents allow that the claim has been exhausted and argue the Arizona Court of Appeals' conclusion the exclusion of this testimony was not error.   Respondents further assert Petitioner has not properly stated a claim that his federal constitutional rights were violated.

Moreover, the trial court's decision to preclude Brackney's grand jury testimony was neither contrary to nor an unreasonable application of Supreme Court precedent.   In Taylor, 484 U.S. at 414, the Court declined to "draft a comprehensive set of standards to guide the exercise of discretion in every possible case [of witness preclusion]," instead holding that, "the mere invocation of [the right to call witnesses] cannot automatically and invariably outweigh

1    countervailing   public   interests."
2    Accordingly, federal habeas review is not
     available.

3    Docket No. 24 at 36.

4        As stated supra, the trial court's preclusion of

5    evidence violates a federal habeas petitioner's right to due

6    process of law only when the preclusion of the evidence has a

7    substantial and injurious effect in determining the verdict.

8    See Gill, 342 F.3d at 922.  Because Mr. Brackney's grand jury

9    testimony was not Petitioner's only defense, the preclusion of

10   the testimony did not violate his federal right to due process

11   of law.  Compare Green v. Georgia, 442 U.S. 95, 97, 99 S. Ct.

12   2150, 2151 (1979) (reversing a death sentence when the

13   petitioner was not allowed to introduce testimony at the

14   sentencing phase from a witness who testified that someone else

15   had confessed to killing the murder victim).  Accordingly, the

16   state's decision denying relief on this claim was not clearly

17   contrary to federal law and Petitioner is not entitled to habeas

18   relief on this claim.

19       **15. Petitioner further asserts his "right to present a
20   defense" was violated by the trial court's preclusion of an
     admission of a party opponent.**

21       Respondents allow Petitioner has exhausted this claim.

22   Petitioner argued in his direct appeal that the prosecutor's

23   pretrial assertions regarding Petitioner's familiarity and

24   experience with law-enforcement procedures constituted

25   admissions of a party-opponent.  The statements were made in the

26   context of the proceedings regarding whether Petitioner would be

27   forced to wear a shock-belt during his trial.  Petitioner

28                                  -55-

asserted the government's statements should have been admitted at his trial and could have raised reasonable doubt about his guilt.   See Answer, Exh. G at 53.[11]   The Arizona Court of Appeals concluded Petitioner was not entitled to relief on this basis, holding the statements were not judicial admissions concerning facts at issue in the trial.  Id., Exh. J at 24.

A claim that a state trial court improperly classified testimony pursuant to state laws of evidence is not cognizable on federal habeas review.  Whether or not a statement is an admission of a party-opponent is a decision committed to the discretion of the state trial court and an exercise of discretion on an evidentiary issue is not a violation of federal law sufficient to warrant habeas relief.  See McNeil v. Middleton, 402 F.3d 920, 923 (9th Cir. 2005); Bannister v. Delo, 100 F.3d 610, 622, n.12 (8th Cir. 1996).

**16. Petitioner contends his right to an unbiased judge was violated.**

Respondents allow that Petitioner has exhausted this

_____

[11]

The court precluded Sanders from presenting the following admission made by the state in response to Sanders' objection to being forced to wear a shock belt:

Michael Sanders is sophisticated in all S.W.A.T. type tactics and equipment utilized by law enforcement personnel.  Michael Sanders has a law enforcement background and for the past several years has worked as a bounty hunter.  He is experienced at apprehending and transporting dangerous criminals and understands the tactics of law enforcement.  Through his work as a bounty hunter, Mr. Sanders has established contacts with a person/persons in the county of Mexico.  Mr. Sanders is an accomplished marksman.

Answer, Exh. G at 53.

-56-

claim, and assert the state courts' decisions that Petitioner's rights were not violated in this regard were not clearly contrary to federal law.   Petitioner asserted in his direct appeal that denying his motion for change of judge denied him the right to due process of law and a fair trial.   Petitioner argued the judge assigned to his trial was biased because the trial judge had presided over another capital case wherein the defendant raised a third party defense alleging that Petitioner committed the murders.

The Arizona Court of Appeals denied relief on this claim, concluding Petitioner had failed to prove the trial judge was biased or prejudiced.   The Court of Appeals noted the only proof of bias proffered by Petitioner was the fact of the prior criminal proceedings.   See Answer, Exh. J at 28-30.   The Court of Appeals presumed, in the absence of evidence to the contrary, that there was nothing in the other matter that would prevent the judge from providing Petitioner with a fair trial.

The Due Process Clause of the United States Constitution guarantees a criminal defendant the right to a fair and impartial judge.   See, e.g., In re Murchison, 349 U.S. 133, 136, 75 S. Ct. 623, 625 (1955).   However, to succeed on a claim of judicial bias a federal habeas petitioner must "overcome a presumption of honesty and integrity in those serving as adjudicators."   Withrow v. Larkin, 421 U.S. 35, 47, 95 S. Ct. 1456, 1464 (1975).

To be entitled to federal habeas relief on a claim that the state trial judge was so prejudiced as to violate the

-57-

petitioner's federal constitutional right to due process, the petitioner must establish the state trial judge's behavior rendered his trial fundamentally unfair. See, e.g., Duckett v. Godinez, 67 F.3d 734, 740 (9th Cir. 1995); Gayle v. Scully, 779 F.2d 802, 806 (2d Cir. 1985); McBee v. Grant, 763 F.2d 811, 818 (6th Cir. 1985). The petitioner must show either actual bias or the appearance of bias creating a conclusive presumption of actual bias. See United States v. Lowe, 106 F.3d 1498, 1504 (10th Cir. 1997). Adverse rulings are not themselves sufficient to establish bias or prejudice. See, e.g., Wallace v. Bell, 387 F. Supp. 2d 728, 737 (E.D. Mich. 2005).

Petitioner has not established the trial judge was biased. See Duckett, 67 F.3d at 740. Petitioner has not articulated any facts to overcome the presumption that the trial judge was impartial. The judge presiding over Petitioner's criminal trial had no direct, personal, or substantial interest in seeing him convicted of murder or any other related charge and, accordingly, there is no evidence of bias. See Paradis v. Arave, 20 F.3d 950, 958 (9th Cir. 1994) ("[D]efendants are entitled to a judge who has no direct personal interest in the outcome of a proceeding."). The fact the judge had previously presided over other criminal proceedings wherein Petitioner was implicated in a crime does not establish the judge was likely to be biased against Petitioner in the criminal proceedings at issue. See, e.g., Taylor v. Hayes, 418 U.S. 488, 501, 94 S. Ct. 2697, 2704-05 (1974) ("the inquiry must be not only whether there was actual bias on [the judge's] part, but also whether

-58-

1  there was such a likelihood of bias or an appearance of bias

2  that the judge was unable to hold the balance between

3  vindicating the interests of the court and the interests of the

4  accused").

5       Because there is no evidence that Petitioner was

6  treated unfairly by the trial judge, the state court did not err

7  in rejecting this claim and the state court's decision was not

8  clearly contrary to federal law.  See Jeffers v. Ricketts, 832

9  F.2d 476, 482 (9th Cir. 1987) (stating that habeas relief is

10 available only when petitioner demonstrates unfair treatment due

11 to judicial bias), rev'd on other grounds, 497 U.S. 764 (1990);

12 Loritz v. Terhune, 60 Fed. App. 1, 2-3 (9th Cir. 2002).

13 Accordingly, Petitioner is not entitled to habeas relief on this

14 claim.

15       **17.    Petitioner maintains the Maricopa County
   Attorney's Office had a real conflict of interest with regarding
16 to their criminal prosecution of Petitioner, a former
   confidential informant, which violated his right to due process
17 of law.**

18       Petitioner presented this claim in his direct appeal

19 and the Arizona Court of Appeals concluded that

20            there was no abuse of discretion by the trial
              court in denying defendant's motion.  To the
21            extent there is any appearance of impropriety
              in having the MCAO prosecute defendant in
22            this matter it is extremely attenuated. ...
              More importantly, there is nothing about the
23            fact that defendant assisted the MCAO with
              other matters nearly a decade earlier that
24            would create prejudice to him in the present
              matter.... Given the absence of any evidence
25            of a continuing relationship between
              defendant and the MCAO or any other special
26            circumstances, we agree with the trial court
              that the arguments [regarding a conflict] are
27            purely speculative.

28                                    -59-

1

2    Answer, Exh. J at 32.

3          Petitioner is not entitled to federal habeas relief on

4    this claim because the state court's ruling was consistent with

5    Supreme Court precedent requiring a strong showing in order to

6    conclude that a conflict of interest existed.   See Young v.

7    United States ex rel. Vuitton et Fils S.A., 481 U.S. 787, 811,

8    107 S. Ct. 2124, 2139-40 (1987).   To prevail on a habeas claim

9    that the prosecutor had a conflict of interest the petitioner

10   must establish that they were prejudiced by the conflict.   Cf.

11   Newman v. Frey, 873 F.2d 1092, 1094 (8th Cir. 1989); Hamilton v.

12   Nix, 809 F.2d 463, 470 (8th Cir. 1987).   Petitioner has not

13   established that any alleged conflict created by the MCAO

14   prosecuting him after he had been a paid informant rendered his

15   trial fundamentally unfair and, accordingly, he is not entitled

16   to habeas relief on this claim.   See Gallego v. McDaniel, 124

17   F.3d 1065, 1079 (9th Cir. 1997).

18          **18.  Petitioner  asserts  he  was  deprived  of  his**
     **constitutional right to the effective assistance of counsel**
19   **because his counsel did not present a "legal entry" defense**
     **pursuant to Arizona Revised Statutes § 13-3892.**[12]

20

21          In Petitioner's direct appeal, the Arizona Court of

22   _____

23          [12] This statute provides:
            A private person, in order to make an arrest
24          where a felony was committed in his presence, as
            authorized in § 13-3884, may break open a door or
25          window of any building in which the person to be
            arrested is or is reasonably believed to be, if
26          he is refused admittance after he has announced
            his purpose.
27   Ariz. Rev. Stat. Ann. § 13-3892 (2001 & Supp. 2006).

28                              -60-

Appeals concluded that, as a matter of state law, Arizona Revised Statutes § 13-3892 did not permit Petitioner to enter the victims' home to arrest Mr. Victor Alcantar. Answer, Exh. J.  Referring to the state statutes, the Court of Appeals stated:

> Thus, pursuant to A.R.S. section 13-3892 (1989) (sic), a private person, such as a bail bond surety or agent, is only authorized under Arizona law to break into a building to make an arrest when the person to be arrested has committed a felony in that person's presence. Of course, as part of a bond agreement, a defendant can authorize his surety to enter his home to arrest him under other circumstances, but a defendant has no legal authority to grant his surety the right to enter a third party's home.  As the applicable Arizona law is clear that a private person was not authorized to break into a third party's house under the circumstances in the present case, there was no error in the [limitations on surety] instruction given by the trial court.  The validity of such a provision in a bail bond has been recently restricted in Arizona by virtue of amendments made to A.R.S. section 13-3885, which became effective May 29, 1998. 1998 Ariz. Sess. Laws, ch. 215, § 1.

Id., Exh. J at 10.

In his action for post-conviction relief, Petitioner argued his counsel was ineffective for not asserting a "legal entry" defense pursuant to Arizona Revised Statutes § 13-3892. In denying this claim for post-conviction relief, the Arizona trial court ruled that Petitioner's trial and appellate counsel were not ineffective, stating:

> The evidence at trial did not support any instruction supporting a defense under A.R.S. § 13-3892. Indeed, as the state argues, the Court of Appeals has settled this issue already on direct appeal. Accordingly, this

-61-

1
2
3
4

> issue has been litigated on appeal, and in any event, even if trial counsel's performance was deficient on this point the Court concluded that there was no prejudice to the defendant as the trial outcome would have been no different.

Answer, Exh. P.  The Arizona Court of Appeals affirmed this decision, as did the Arizona Supreme Court, in denying post-conviction relief.

The Arizona courts' decision that Petitioner's right to the effective assistance of counsel was not violated by the failure to present a "legal entry" defense was not clearly contrary to established federal law.  To state a claim for ineffective assistance of counsel, a petitioner must show that his attorney's performance was deficient and that the deficiency prejudiced the petitioner's defense.  See <u>Strickland v. Washington</u>, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984).

To succeed on an ineffective assistance of counsel claim premised on his counsel's failure to raise an argument, the petitioner must establish that the argument was likely to be successful, in order to prove that he was prejudiced by his counsel's failure to raise the argument.  See <u>Juan H. v. Allen</u>, 408 F.3d 1262, 1273 (9th Cir. 2005) ("trial counsel cannot have been ineffective for failing to raise a meritless objection"); <u>Van Tran v. Lindsey</u>, 212 F.3d 1143, 1156 (9th Cir. 2000).  A defendant has no constitutional right to compel counsel to raise particular claims if counsel, as a matter of professional judgment, decides not to present those issues.  See <u>Jones v. Barnes</u>, 463 U.S. 745, 751, 103 S. Ct. 3308, 3312 (1983)

-62-

(declining to promulgate "a per se rule that the client, not the professional advocate, must be allowed to decide what issues are to be pressed").

The state court's interpretation of Arizona law, i.e., that counsel was not ineffective for failing to present a justification defense because the relevant statute did not provide a legitimate justification defense, was not prejudicial to Petitioner, and is binding on this Court.  See Powell v. Lambert, 357 F.3d 871, 874 (9th Cir. 2004); Chapman v. LeMaster, 302 F.3d 1189, 1196 (10th Cir. 2002).  Therefore, the state court's decision that counsel was not ineffective for failing to raise this defense, because competent representation would not require raising a losing argument and because Petitioner was not prejudiced thereby, was not contrary to clearly established federal law, or one involving an unreasonable application of clearly established federal law.  See Yarborough v. Gentry, 540 U.S. 1, 6, 124 S. Ct. 1, 4 (2003).  Compare Wiggins v. Smith, 539 U.S. 510, 528, 123 S. Ct. 2527, 2538 (2003).  Therefore, Petitioner is not entitled to federal habeas relief on this claim.

**19. Petitioner contends his counsel was ineffective because she did not file a motion for a new trial based on the ground that the jury was not instructed on the provisions of Arizona Revised Statutes § 13-3892.**

This claim may be denied for the reasons stated *supra*. Petitioner raised this claim and the Arizona courts concluded Petitioner's counsel was not ineffective for failing to move for a mistrial on this basis because such a motion would have been

denied and, accordingly, the failure to do so was not prejudicial. Because, as stated *supra*, this conclusion of state law is binding on this Court, the state courts' decisions regarding counsel's performance in this regard are not clearly contrary to federal law and Petitioner is not entitled to relief on this claim.

**20. Petitioner asserts his appellate counsel was ineffective because they failed to raise assert Petitioner's trial counsels' ineffectiveness.**

Pursuant to Arizona law, a claim of ineffective assistance of trial counsel must be raised during post-conviction relief proceedings, and cannot be raised on direct appeal. See, e.g., Arizona ex rel. Thomas v. Rayes, 214 Ariz. 411, 153 P.3d 1040, 1043-44 (2007) (en banc). Accordingly, Petitioner's appellate counsel had no basis for raising any claim of ineffective assistance of trial counsel on direct appeal and any such claim would have failed. Because Petitioner was not prejudiced by the alleged deficiency, habeas relief is foreclosed on the basis of this claim.

**21. Petitioner contends both his trial counsel were ineffective because they presented expert witness testimony on police tactics rather than expert witness testimony regarding the professional standards for a bail enforcement agent.**

Petitioner raised this claim in his action for post-conviction relief. The Arizona trial court concluded Petitioner had not been deprived of his right to the effective assistance of counsel due to this alleged error. The trial court determined Petitioner had failed to proffer any proposed testimony that should have been presented by trial counsel on

his behalf but was not, i.e., Petitioner had not made a factual case for deficient performance. Additionally, the trial court also concluded that, even if counsel had called such an expert, the verdict would have been the same, i.e., that Petitioner was not prejudiced.

The trial court's conclusion that Petitioner was not prejudiced by any alleged deficient performance by his counsel for not providing expert witness testimony regarding bail enforcement procedures was not clearly contrary to federal law nor an unreasonable application of the law to the facts of this case. At Petitioner's trial, the state presented expert testimony on the standards of the bail recovery industry. See Answer, Exh. LL, at 5-60. Petitioner's counsel was able to cross-examine this witness. Accordingly, the testimony Petitioner alleges should have been introduced was introduced by means of cross-examination of the state's witness and Petitioner was not prejudiced by any alleged failure to present another witness regarding this particular evidence, which would have been redundant. See James v. Borg, 24 F.3d 20, 27 (9th Cir. 1994).

**22. Petitioner contends the State of Arizona "induced" a violation of his right to the effective assistance of counsel by "invading" Petitioner's confidential communications with his attorney.**

This claim may be denied for the reasons stated *supra* with regard to Plaintiff's seventh claim for habeas relief.

-65-

**23. Petitioner also maintains the "State of Arizona induced ineffective assistance of appellate counsel by invading and interfering with [Petitioner's] attorney-client relationship and confidential communications with his retained appellate attorney...".**

This claim is identical to the claim raised immediately *supra*, and may be denied on the merits based on the reasoning provided with regard to Petitioner's seventh claim for relief.

**24. Petitioner also argues he is entitled to relief because the "State of Arizona by and through Maricopa County has suspended the privilege of the writ of habeas corpus via its Office of Court Appointed Counsel in violation of Article I § 9, cl.2 of the United States Constitution."**

Petitioner contends that inadequate compensation of attorneys representing indigent defendants indirectly suspended the writ of habeas corpus because it impacted the ability of his appointed appellate counsel and his appointed post-conviction relief counsel to present the federal constitutional basis of his claims to state courts.

This specific claim of inadequate representation of appellate counsel is raised for the first time in the federal habeas petition. The claim is not exhausted because it presents a new legal theory and a new factual claim as a basis for relief. See Picard, 404 U.S. at 275-76; Harless, 459 U.S. at 6-7. Accordingly, Petitioner may not be awarded habeas relief on this claim absent a showing of cause and prejudice.

Petitioner has not established prejudice regarding his failure to properly exhaust this claim. Petitioner was able to exhaust numerous federal constitutional claims in his direct appeal and in his action for post-conviction relief, i.e., a total of sixteen claims for relief. Petitioner has not

-66-

demonstrated that he was prejudiced by his counsels' failure to exhaust any specific, meritorious federal constitutional claim in the state courts. Additionally, Petitioner has not established that the basis for his counsels' alleged failure to present additional claims was the result of any action by the state with regard to court-appointed counsel, as contrasted with an alleged failure by Petitioner's retained appellate counsel, Jane Doe, to present federal claims to the state court. Compare Harris v. Champion, 15 F.3d 1538 (10th Cir. 1994) (finding a due process violation where a two-year delay in adjudicating an appeal was caused by the excessive case load of the public defenders' office); Brooks v. Jones, 875 F.2d 30, 31 (2d Cir. 1989) (granting a conditional writ of habeas corpus where an eight-year delay in perfecting an appeal was caused by "inexcusable neglect by a succession of assigned counsel, who relieved one another but did little else...").  Accordingly, Petitioner is not entitled to federal habeas relief on this claim.

**25. Petitioner further alleges the State of Arizona discriminated against him by violating his rights pursuant to Title II of the Americans with Disabilities Act of 1990, which violation constituted a violation of Petitioner's right to a criminal trial free of constitutional error.**

Where a federal statute, rather than the United States Constitution, is the basis for a federal habeas claim, relief is available only when the statutory error qualifies as "a fundamental defect which inherently results in a complete miscarriage of justice [or] an omission inconsistent with the rudimentary demands of fair procedure."  28 U.S.C. § 2254(a)

-67-

(1994 & Supp. 2007); <u>Hill</u>, 368 U.S. at 428; <u>Reed</u>, 512 at 348. Petitioner has not established that, despite being provided with hearing aids, he was prejudiced by any alleged failure to accommodate his hearing loss.  The Court finds no evidence that Petitioner's hearing status resulted in a complete miscarriage of justice or denial of the rudimentary demands of fair procedure.

**26. Petitioner asserts his conviction must be vacated because prejudicial and cumulative errors worked to his actual and substantial disadvantage, resulting in the violation of his constitutional rights.**

Petitioner contends that legal errors in his case, from his pre-trial proceedings through his postconviction proceedings, in combination, denied him a fair trial, i.e., his right to due process of law.

Federal habeas doctrine acknowledges that, even if no single error was prejudicial to the petitioner, if several substantial errors in the petitioner's criminal proceedings occurred, "their cumulative effect may nevertheless be so prejudicial as to require reversal." <u>Killian v. Poole</u>, 282 F.3d 1204, 1211 (9th Cir. 2002) (internal quotation omitted).  The cumulative error doctrine applies where no single trial error examined in isolation warrants relief but the cumulative effect of multiple errors prejudiced the petitioner, violating the petitioner's right to due process.  <u>See</u>, <u>e.g.</u>, <u>Whelchel</u>, 232 F.3d at 1212.

However, absent a specific constitutional violation, habeas relief based on a petitioner's assertion of cumulative

error is barred unless the petitioner's trial was so infected with unfairness "as to make the resulting conviction a denial of due process." <u>Donnelly v. DeChristoforo</u>, 416 U.S. 637, 643, 94 S. Ct. 1868, 1871 (1974).  <u>See</u> <u>also</u> <u>Parle v. Runnels</u>, 387 F.3d 1030, 1045 (9th Cir. 2004).  Additionally, a federal court may not grant habeas relief on the basis of errors of state law, which errors' combined effect does not violate the United States Constitution.  <u>See</u> <u>Lewis v. Jeffers</u>, 497 U.S. 764, 780, 110 S. Ct. 3092, 3102 (1990); <u>Parle</u>, 387 F.3d at 1045.

Petitioner's assertions of legal error are essentially assertions that the Arizona law regarding the legitimacy of Petitioner's entry into the home of a third-party to enforce an expired bail warrant is other than Petitioner needs or wants it to be.  The errors asserted by Petitioner are all "errors" relating to Petitioner's assertion of a theory of the case which the jury obviously did not believe, i.e., that Petitioner's only intent in entering the home was to arrest Mr. Alcantar. However, considering all of the evidence introduced at the trial and the evidence Petitioner sought to introduce, the jury could clearly conclude from the evidence that Petitioner intended to enter the home to effectuate a burglary, and the evidence excluded, Petitioner asserts in error, if admitted would not have compelled the jury to conclude otherwise.

**V Conclusion**

Petitioner is not entitled to federal habeas relief on his claims.  Several of the claims were procedurally defaulted and, because Petitioner has not shown cause for nor prejudice

arising from his default of the claims, federal habeas relief may not be granted on the merits of those claims. Additionally, with regard to the claims properly presented to the Arizona state courts, the state courts' conclusions were not contrary to nor an unreasonable application of federal law and, accordingly, Petitioner is not entitled to relief on the merits of those claims. Furthermore, some of Petitioner's claims may be denied independently on the merits of the claims and some of Petitioner's claims are predicated on errors of state law not arising to the level of a violation of Petitioner's right to due process and, accordingly, Petitioner is not entitled to relief on those claims.

**IT IS THEREFORE RECOMMENDED** that Mr. Sanders' Petition for Writ of Habeas Corpus be **denied and dismissed with prejudice**.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment.

Pursuant to Rule 72(b), Federal Rules of Civil Procedure, the parties shall have ten (10) days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. Thereafter, the parties have ten (10) days within which to file a response to

the objections.    Failure  to  timely  file  objections  to  any factual or legal determinations of the Magistrate Judge will be considered  a  waiver  of  a  party's  right  to  de  novo  appellate consideration  of  the  issues.    See  United States v. Reyna-Tapia, 328  F.3d  1114,  1121  (9th  Cir.  2003)  (en  banc).    Failure  to timely file objections to any factual or legal determinations of the Magistrate Judge will constitute a waiver of a party's right to appellate review of the findings of fact and conclusions of law  in  an  order  or  judgment  entered  pursuant  to  the recommendation of the Magistrate Judge.

DATED this 30th day of October, 2007.

_____
Mark E. Aspey
United States Magistrate Judge